Mr. Justice Hunt
delivered the opinion of the court:
The present case is one of a class of which several are now pending in this court, and many more it is understood are before the Court of Claims.
The claimant was a captain of infantry in the United States Army, and on the 7th day of January, 1870, by special order from the Adjutant-General’s Office, at his own request, was *105 ordered home to await orders. This was done by virtue of the Consolidating Act of March 3, 1869. The claimant proceeded from Fort Bridger, Wyoming Territory, where he then was, to his home in New York City. On the 28th of February, 1870, he reported as waiting orders at that place, and afterwards as waiting orders at Littleton, N. J., which was then his home.
The claim now made is -for mileage in traveling from Fort Bridger to New York, and for commutation for quarters and for fuel while thus awaiting orders.
The Court of Claims allowed the petitioner both for his mileage and the commutation for quarters and fuel during the period mentioned. The questions will be separately considered.
1. As to mileage.
Comment is made upon the circumstance that the claimant reported himself' to the Department as awaiting orders at the city of New York, on the 31st of January, 1870, specifying that place as his home, and that on the 31st of March following he reported himself at Littleton, N. J., specifying that place as his home. We see nothing in this that should prejudice the claimant’s right of recovery. New York may well have been his home in January, and Littleton his home in March. It is not extraordinary nor ground of suspicion that an officer should change his place of residence. Whether he resided in New York or in New Jersey could make no difference in his position in the Army or in his liability or readiness to respond to any orders given to him. It was indeed important that he should keep the Department advised of his residence, that he could be called upon when it was desired. This he did. The Department made no objection to this change of residence at the time, nor does it place its refusal to pay the mileage upon this ground. We think the circumstance quite unimportant.
The effect of the order to proceed to his home and there to await orders, and the difference between this status and that of an officer absent from duty with leave,” was considered by this court in The United States v. Williamson. (23 Wall. R., 411.) That decision secures to the officer his full pay while thus awaiting orders, and we find no occasion to correct anything contained in it. We are still of the opinion that the officer was not absent on leave, but that he was awaiting orders at his home. It results also from this decision that in thus proceeding to his home he was traveling under orders.
*106 The provision relating particularly to the case we are considering is found in § 1109 of the Army Regulations, authorized and confirmed.by the Act July 28, 1866. It is there provided that “an officer who travels not less than ten miles without troops, escort, or military stores, and under special orders in a case from a superior, or a summons to attend a military court, shall receive ten cents mileage.” This means that he shall be entitled to an allowance of ten cents for each mile thus traveled. It is hardly denied that the claimant was traveling within the meaning of this regulation.
But it is contended that under regulation § 1117 the Department was justified in withholding the allowance. That regulation is in these words: “ When officers are permitted to exchange stations, or are transferred at their own request from one regiment or company to another, the public will not be put to the expense of their transportation. They must bear it themselves.” If A at one station and B at another desire to exchange stations or regiments or companies with each other, and prefer a request to that effect, the provision assumes that the commanding officer may, in his discretion, grant it, but, as no public interest is advanced by it, and it is consented to for the advantage or pleasure of the two officers, they must bear their own expense of transportation in making the exchange. This is just and reasonable.
We are inclined to think that it would be too narrow a construction of this provision to hold that it required that two officers should be concerned in the exchange. An exchange from one station to another station by the same officer at his own request, if found compatible with the public service, would be within the words of the rule, and apparently as much within its spirit as when the exchange was made by and between two officers.
But we are of the opinion that Captain Phisterer did not make an exchange of stations within the meaning of this regulation. In other words, although he left a military station at Fort Bridger, his home at Bew York, to which he went, did not become and is not to be deemed a military station. In the broadest use of language no doubt the word station means a place or position, and it may be said that wherever a man in pursuance of orders stays or remains he is stationed, and that if he is a military man such place becomes a military station. This word (station) has a recognized and a different meaning *107 under different circumstances. It is a technical word in church regulations, in the science of ecclesiology, in the civil law, in surveying, in railroad language, and military science. (See Richardson’s and Worcester’s Dictionaries.)
A “military station”-is merely synonymous with the term “ military post,” and means a place where troops are assembled; where military stores, animate and inanimate, are kept or distributed; udiere military duty is performed or military protection afforded; where something, in short, more or less closely connected with arms or war, is kept or is to be done.
In the Army Regulations the 'two terms are often used con-yertibly. Thus, in the regulations of 1847:
If a post or station should prove unhealthy the troops may be removed, &c. (11, par. 57.)
Whenever a military post or station shall be abandoned the property should be turned over, &c. (11, par. 58.)
Commanding officers of forts and stations on the sea-coast to aid in quarantine regulations. (11, par. 61.)
The military force at any post or station in the Indian Territory shall be employed, &c, (17, par. 91.)
Whenever an officer is ordered from one station to another, or for the performance of any duty, not being with troops, he shall proceed by the most direct route without unnecessary delay ; nor is he, under any pretense whatever, except that of sudden illness, to apply for leave of absence from the time he quits the station at which he receives the order until he has arrived at his place of destination. (45, par. 227.)
Whenever such officer shall appear to have made unusual or unnecessary delay he shall immediately report the cause to the commanding officer of the post. (45, par. 228.)
It is a misuse of language to designate as a post or a military station a cottage in a country village in no way distinguishable in its use or appointments from every other residence in the village, because one of, the persons who lives in it is an officer in the Army. There was no exchange of stations by Captain Phisterer, and, therefore, nothing to except his case from the general law which allowed him mileage for his travel in proceeding to his home.
2. The claim for commutation for quarters and commutation for fuel while at New York and New Jersey is to be considered.
Among the Army Regulations established by the act of March, *108 1863, are tlie following, under the head of “ Quartermaster’s Department:” § 1064. “This Department provides the quarters and transportation of the Army, * * * fuel, forage,” &c. “Barracks and quarters.” § 1086. “Under this head are included the permanent buildings for the use of the Army, as barracks,, quarters, hospitals, storehouses, officers’ stables.” § 1068. “ The number of rooms and amount of fuel for officers and men are as follows: * * * Captain, 2 rooms, 1 as kitchen; cords of wood, | or 3 per' month, according to the season of the year.” § 1071. “ No officer shall occupy more than his proper quarters, except by order of the commanding officer, when there is an excess of quarters at the station.” * * * § 1073. “ Fuel issued to officers or troops is public property for their use; what they do not actually consume shall be returned to the quartermaster and taken up on his quarterly return.” § 1077-“An officer may select quarters occupied by a junior, but having made his choice he must abide by it, and shall not again at the fort displace a junior unless himself displaced by a senior.” § 1080. “When public quarters cannot be furnished to officers at stations without troops, or to enlisted men at general or department headquarters, quarters will be commuted at a rate fixed' by the Secretary of War, and fuel at the market-price delivered.” * * * § 1083. “ Officers absent from their appropriate duties for a period exceeding six months, either with or without leave, shall not receive the allowances” mentioned. § 1084. “ Officers and troops in the field are not entitled to commutation for quarters or fuel.”
The claimant bases his demand upon § 1080, above set forth. To maintain this claim it must be held that Captain Phisterer, while at his house at New York and in New Jersey, was at a station without troops. That he was without troops is plain enough, but that his home on these occasions was not a military station we have undertaken to show when considering his claim for mileage. Thesame construction of the word “ station ” which gives him his mileage cuts off his claim for commutation.
We think the regulation we have referred to was not intended for a case like that we are considering; that is, where an officer is at his own home awaiting orders and having no public duty whatever to perform.
Quarters are expected to be furnished by the Government to its officers; when it cannot thus furnish, it allows them to be *109 obtained otherwise, and pays a money-compensation therefor, called commutation. This is upon the assumption, first, that the officers are actually engaged in the public service$ and, second, that such quarters are necessary to the discharge of their duty. It is upon the latter idea that commutation for fuel and quarters is not allowed to officers when in the field. The duty there is public not only, but of the most necessary character; still apartments, kitchen, and offices are not there necessary, and cannot be commuted for.
We are of the opinion that the claimant was not at a station, in the sense that he is entitled to public quarters, or to a compensation in the form of commutation for rooms and apartments or fuel obtained or supposed to be obtained in lieu of those expected to be furnished by the Government. In making this allowance we think the Court of Claims erred.
The briefs submitted contain suggestions of what would be the result in various cases, which, it is said, may arise under these regulations. Our judgment is intended to be given upon the precise case before us, and upon no other. Should other cases be presented, the Court of Claims will give them the attention required, as will'this court should they come here. Both courts have business enough to occupy them without anticipating cases which may never be presented.
The judgment of the Court of Claims is reversed, and the cause remanded to that court with directions to enter a judgment in favor of the claimant for the mileage and denying his petition as to the claim of commutation for quarters and fuel.
At the same time, under and in accordance with the foregoing decision, the following cases were decided: Chilson v. The United States, Rheem v. Same, Lynde v. Same, Mears v. Same.