UNITED STATES *v.* LIPPITT.

1. The limitation prescribed by the act of March 3, 1863 (12 Stat. 765), amendatory of an act establishing the Court of Claims, does not bar in that court claims referred to it for determination by the head of an executive department, provided they were presented for settlement at the proper department within six years after they had first accrued.

2. Pursuant to orders, the colonel of a regiment reported, July 25, 1863, to the headquarters of a department, there to " await further orders." While awaiting them, he was not furnished fuel or quarters. *Held,* that he is entitled to recover their commuted value.

APPEAL from the Court of Claims.

This was a claim of Lippitt for $1,742, to which he alleged that he was entitled as commutation for fuel and quarters while he was in the military service of the United States. It was referred to the court below by the Department of War.

He thereupon filed his petition. The United States traversed all its averments, and also pleaded that the claim was not filed in or transmitted to the Court of Claims within six years after it had accrued.

The court below found the following facts : —

1. The claimant was colonel of the Second California Volunteers, a regiment in the military service of the United States, from some day preceding the 2d of July, 1863, to some day subsequent to the 1st of August, 1864.

2. On the 2d of July, 1863, the claimant, then being in command of the district of Humboldt, California, where his regiment was stationed, was ordered by the commanding general of the Department of the Pacific to report in person at the head-quarters of the department, there to await further orders. The head-quarters of the department were at San Francisco during the war. The order referred to is that annexed to and forming part of the petition.

3. In compliance with these orders, the claimant about the 25th of July, 1863, left his regiment, and from about that day to the 1st of August, 1864, was in San Francisco, absent from his regiment, awaiting orders.

4. There is no evidence that during the said period, the claimant received quarters and fuel in kind. There is no evidence

that they could have been furnished in kind. The records of the War Department show that most if not all the officers stationed in San Francisco received commutation of quarters and fuel.

5. The commuted value of quarters and fuel in San Francisco, during the said period, for a colonel of infantry, was $1,742.

6. On the 19th of July, 1864, the following order was issued, in pursuance of which the claimant returned to his regiment : —

"HEAD-QUARTERS DEPARTMENT OF THE PACIFIC,
"SAN FRANCISCO, CAL., July 19, 1864.

"I. Colonel Francis J. Lippitt, Second Infantry California Volunteers, will repair to Fort Miller and assume command of his regiment; head-quarters at Fort Miller.

"The Quartermaster's Department will furnish the necessary transportation.

.    .    .    .    .    .    .    .    .    .    .

"By command of Major-General McDowell.
"RICHARD C. DUNN,
"*Assistant Adjutant-General.*"

7. It does not appear that the claimant was ordered to or performed any military duty during the time he was awaiting orders ; nor that he reported himself at head-quarters, San Francisco, after his first report on his arrival there.

8. It does not appear that claimant made any demand on the proper officer at San Francisco that quarters and fuel be furnished him.

9. It does not appear that claimant received any military order after being placed on " awaiting orders," until the order of July 19, 1864, to repair to his regiment.

10. The claimant, in 1865, presented his claim to the proper department, and pressed its settlement from that day to the 9th of January, 1878, when it was referred by the War Department to this court, by virtue of the following order : —

" *To the Honorable the Judges of the Court of Claims :* —

"The undersigned, Secretary for the Department of War of the United States, hereby respectfully represents that a claim has been made against said department by Francis J. Lippitt, late colonel

Second California Infantry, brevet brigadier-general United States Volunteers, for commutation of fuel and quarters while awaiting further orders at San Francisco, in 1863–64.

"Said claim involving controverted questions of law, and the decision affecting a class of cases, the undersigned hereby, and in accordance with the provisions of sect. 1063 Revised Statutes of the United States, causes said claim, with all the papers pertaining thereto, to be transmitted to the Court of Claims for trial and adjudication.

"GEO. W. MCCRARY,<br>"<i>Secretary of War.</i>

"WAR DEPARMENT, Jan. 9, 1878."

Filed in the Court of Claims Jan. 10, 1878.

The Court of Claims held that the action was not barred by the Statute of Limitations, and rendered judgment on the merits for the claimant.

The United States then appealed to this court.

*The Attorney-General* for the United States.
*Mr. James Lowndes, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

The correctness of the judgment below depends, in part, upon the construction of the tenth section of the act of March 3, 1863, amendatory of the act of Feb. 24, 1855, establishing the Court of Claims. That section declares "that every claim against the United States, cognizable by the Court of Claims, shall be for ever barred, unless the petition setting forth a statement of the claim be filed in the court, or transmitted to it under the provisions of this [that] act, within six years after the claim first accrues," &c.

The claims against the government, of which the Court of Claims could, at that date, take cognizance, were those founded upon some law of Congress, or upon some regulation of an executive department, or upon some contract, express or implied, with the government of the United States, which might be suggested to that court by a petition filed therein; and also, all claims which might be referred to the court by either House of Congress. The limitation of six years applied, therefore, to every demand asserted against the government in the Court of

Claims, which it had, when the act of 1863 was passed, jurisdiction to hear and determine. Within the meaning of the act all such claims were cognizable by that court.

By a subsequent statute, approved June 25, 1868, authority was given to the head of any executive department, whenever any claim was made upon that department involving disputed facts or controverted questions of law, where the amount in controversy exceeded $3,000, or where the decision would affect a class of cases, or furnish a precedent for the future action of any executive department in the adjustment of a class of cases, without regard to the amount involved in the particular case; or where any authority, right, privilege, or exemption was claimed or denied under the Constitution of the United States, to cause such claim, with all documents pertaining thereto, to be transmitted to the Court of Claims, to be there *proceeded in* as if originally commenced by the voluntary action of the claimant.

The court was also empowered to try and adjudicate any claim of like character, amount, or class transmitted to it by the Secretary of the Treasury, upon the certificate of an auditor or comptroller of the treasury.

But the act accompanied this enlargement of the jurisdiction of the Court of Claims with the restriction that no case should be referred to it by the head of a department, unless it belonged to one of the several classes of cases to which, by reason of the subject-matter and character, the court could, under the then existing laws, take jurisdiction on the voluntary action of the claimant.

The claim of appellee first accrued in 1864. It was presented to the War Department in the year 1865, and its settlement pressed — so the finding declares — until Jan. 9, 1878. On that day, it was transmitted by the Secretary of War to the Court of Claims for its determination. It was transmitted, not, so far as the record shows, at the instance or with the consent of the appellant, but because it involved controverted questions of law, the decision whereof would affect a class of cases.

It is conceded by the government that the claim was presented at the proper department, and, when presented, was not barred by the limitation of six years. But the contention of

the Attorney-General is that the Court of Claims is prohibited by the express words of the statute from giving judgment against the government upon *any* claim which is not asserted by petition filed therein within six years after the claim first accrued, or which is not within that period transmitted to the court from one of the Houses of Congress or by the head of an executive department.

We are unable to concur in this construction of the statute of March 3, 1863. Such a construction would work an injustice which we cannot suppose Congress intended should be done to the citizen having a demand against the government. The claim in question, although cognizable in the first instance by the Court of Claims, was yet properly presented at the department which had authority to pass finally upon it. It should have been there allowed or disallowed long before the expiration of six years from the time it first accrued. The claimant steadily pressed its settlement without, so far as the finding shows, any intimation that it was defectively prepared, or that it would be ultimately rejected. The department held it undisposed of until 1878, and then sent the claimant to the Court of Claims, where he was met at the very threshold of his case by a plea of limitation upon the part of the government. That plea, if sustained, would defeat the only object of the reference. It would prevent the department from obtaining for its future guidance the judgment of the court upon controverted questions of law affecting a large class of cases. It should not be sustained, unless we are required to do so by some absolute, unbending rule of construction.

When this claim was presented at the War Department for settlement, there was no statute allowing the heads of executive departments to refer claims to the Court of Claims for adjudication. But when the act of June 25, 1868, was passed, its provisions necessarily applied to all claims then before the executive departments which belonged to one of the several classes, of which, by reason of their subject-matter and character, the Court of Claims could take cognizance upon the voluntary petition of the claimant. The claim of appellee certainly belonged to one of those classes. It was not, as we have seen, barred by limitation, when that act was passed. It could, then,

in 1868, have been referred by the War Department to the Court of Claims for its determination. But, instead of adopting that course, at a time when no question of limitation could be raised, its reference was postponed or delayed for nearly ten years after the passage of the act of 1868. We are satisfied that the delay was accidental, certainly not with any intention to defraud or injure the claimant. If the plea had, upon its face, admitted, or if the fact was established by competent evidence, that the delay in deciding, or in referring the claim to the Court of Claims, was intentional, or with a purpose to defeat the claimant, by limitation, the court would certainly not permit the government to profit by such a course. Why should a different conclusion be reached when the delay is unexplained, and is inconsistent with proper diligence in the transaction of the public business? It seems to the court that, looking at the purpose which Congress had in the establishment of the Court of Claims, and in enlarging its powers, as indicated in the acts of 1863 and 1868, the just and reasonable construction of the tenth section of the first-named act requires us to hold that limitation is not pleadable, in the Court of Claims, against a claim cognizable therein, and which has been referred by the head of an executive department for its judicial determination, provided such claim was presented for settlement at the proper department within six years after it first accrued; that is, within six years after suit could be commenced thereon against the government. Where the claim is of such a character that it may be allowed and settled by an executive department, or may, in the discretion of the head of such department, be referred to the Court of Claims for final determination, the filing of the petition should relate back to the date when it was first presented at the department, for allowance and settlement. In such cases, the statement of the facts, upon which the claim rests, in the form of a petition, is only another mode of asserting the same demand which had previously, and in due time, been presented at the proper department for settlement. These views find support in the fact that the act of 1868 describes claims presented at an executive department for settlement, and which belong to the classes specified in its seventh section, as *cases* which may be trans-

mitted to the Court of Claims. "And all the *cases* mentioned in this section, which shall be transmitted by the head of an executive department, or upon the certificate of any auditor or comptroller, shall be *proceeded in* as other cases pending in said court, and shall, in all respects, be subject to the same rules and regulations," with right of appeal. The cases thus transmitted for judicial determination are, in the sense of the act, commenced against the government when the claim is originally presented at the department for examination and settlement. Upon their transfer to the Court of Claims they are to be "proceeded in as other cases pending in said court."

Whether if a claim be presented at the proper department when six years has elapsed after it first accrued, the government is at liberty, upon its transfer therefrom to the Court of Claims, to plead the limitation of six years, or whether the court, in such cases, must itself interpose the statute for the protection of the government, are questions not necessary to be decided in this case.

Touching the merits of the case, it appears that the appellee was required, by competent military authority, to leave his regiment, then on duty in the district of Humboldt, California, to the command of which he had been previously assigned, and report in person at the head-quarters of the department of the Pacific, in San Francisco, *there to await further orders.* He remained in that city, absent from his regiment, from about July 25, 1863, until Aug. 1, 1864, awaiting orders. It is immaterial that he performed no active duty while thus awaiting orders. He was subject to assignment for such duty, while in San Francisco, and, as said by the court below, the responsibility for his non-employment rested with his superior officer. What was said in *United States* v. *Williamson* (23 Wall. 411) has some application here. That case arose under the act of March 3, 1863, relating to the government of the army, by which it was enacted that any officer absent from duty with leave, except for sickness or wounds, shall, during his absence, receive half the pay and allowances prescribed by law, and no more. Williamson claimed full pay while absent, upon his own request, from his command. He was, however, required to remain at a particular place, and to await orders. Among

other things we there said: "The obligations of an officer directed to proceed to a place specified, there to await orders, are quite different. It is his duty to go to that place, and to remain at that place. He cannot go elsewhere; he cannot return until ordered. He is as much under orders, and can no more question the duty of obedience, than if ordered to an ambush to lie in wait for the enemy, to march to the front by a particular direction, or to the rear by a specified time."

Nor is there any thing in *United States* v. *Phisterer* (94 U. S. 219) in conflict with the conclusion we have reached. We there held that an army officer at his own home awaiting orders, and having no public duty to perform, was not entitled to commutation for quarters or fuel. No such case is presented by the special finding.

Some stress is laid upon the fact that appellee has failed to show affirmatively that he made a demand on the proper officer at San Francisco for quarters and fuel in kind. There is some force in this suggestion, but, under the circumstances of this case, we do not think it should control our judgment. There is no evidence that quarters and fuel could have been furnished in kind. On the contrary, the records of the War Department show that most, if not all, the officers stationed in San Francisco during this period received commutation of quarters and fuel. In the light of all the facts found by the court below, and since it does not appear that the claim was objected to in the War Department upon any such ground, during the thirteen years it lay there, undisposed of, despite the fact that its settlement was steadily pressed by the claimant, we are disinclined to reverse the judgment because it does not appear affirmatively that appellee, upon his arrival in San Francisco, made a formal requisition for quarters and fuel.

Our conclusion is that, under the law as it stood when appellee's claim accrued, he was entitled to the commuted value of quarters and fuel while in San Francisco awaiting orders.

*Judgment affirmed.*