Atkinson, J.,
delivered the opinion of the court:
There is no controversy as to the facts involved in this case. Samuel R. Colhoun was, at the beginning of the controversy now before us, a pay director in the United States Navy, with the rank of captain, of more than twenty years’ service. He was on duty as a pay officer on the U, S. S. Iowa at the time he was ordered by the Navy Department at Washington to detach himself from said ship and proceed *34 to his home in the United States for the purpose of settling his accounts, and to await the further orders of the Navy Department. In obedience to this order he left said ship February 25, 1903, and arrived at his home, in Brooklyn, N. Y., February 26 of that year.
The- only questions in the case, therefore, to be disposed of by the court are: Was the claimant, Colhoun, in conforming to the orders received by him from the Navy Department while at his home in the city of Brooklyn, N. Y., on duty as a naval officer of the United States; and if so, is he entitled to commutation for quarters at the expense-of the United States while he remained at his home in Brooklyn, from February 26, 1903, to and including March 26, 1903, being thirty days, during which time he was engaged in the work" of settling his accounts with the United States as a naval paymaster thereunder?
It fs insisted that, if claimant was ordered to report at his home merely for his own personal convenience, and not for the convenience and benefit of the Government of the United States, his contention in this case could not be entertained by the court; but if, on the other hand, his appearance in the city of Brooklyn, in obeying the order of his superior officers,was for the'good of the service and the benefit particularly of the Navy Department of the United States, the opposite or contrary must be true. <
The order of the Bureau of Navigation, under date of January 22, 1903, directed the claimant to detach himself from, his. ship and to “ proceed to your [his] home in the United States, settle your [his] accounts, and await orders.” This order was mandatory, and therefore should be and was strictly obeyed. On arriving at his home in Brooklyn, N. Y., no quarters were furnished him. The only alternative, therefore, that Avas left to him was to secure suitable quarters at the expense of the Government in some proper locality, which he did (sec. 1080, Army Regulations, 1863; act June 18, 1878, 20 Stat. L., 151) ; and when he filed his account or bill of expense against the United States payment of the same was refused by the accounting officers of the Treasury. Hence this suit. (Sec. 9, act June 18, 1878, 20 Stat. L., 159; sec. 13, *35 act- March 3,1899', 30 Stat. L., 1007; sec. 1489, Army Begula-t-ions, 1901.)
The claimant contends that upon his arrival at his home in Brooklyn, being assigned to duty without troops, he promptly proceeded to the settlement of his accounts with the Government, in accordance with Navy Department order of January 22, 1903, and after devoting considerable time to the disposition of the same and finding it to be impossible to complete the work within the twenty days allowed under Navy Begulations he asked for and was granted ten days’ additional time in which to complete the work upon which he was engaged. Consequently he insists that during his thirty clays’ stay in the city of Brooklyn, from February 26, 1903, to and including March 26, 1903, he was on active duty settling his accounts, in obedience to the specific order of the Navy Department bearing date January 22, 1903, aforesaid, but that he was not awaiting orders until he had completed the specific work to which he had been assigned and upon which he was then engaged. In short, his contention narrows itself to this single proposition: He was at his home engaged in the active duty of settling his accounts with the United States as a naval paymaster, and was not, during the thirty days he was thus engaged, “-awaiting orders; ” or, in other words, his accounts were to be settled first and when this work was accomplished he was to make a report to the Navy Department and then “ await orders,” which he did, in accordance with the terms of his assignment.
The defendants insist that the claimant was ordered to return to his home mainly for his own personal convenience, in order that he might prepare himself for the new position to which he had been promoted, and he therefore is not entitled to commutation of quarters at the expense- of the United States while he was at his own home in Brooklyn; and the case of Phisterer against’ the- United States is cited, which was decided by this court in favor of the claimant (12 C. Cls. R., 108), which decision, however, was reversed by the Supreme Court (94 U. S. R., 219).
The Phisterer case differs materially from the case at bar. He (Phisterer) was, upon his own request, ordered to his *36 home to await orders only. The order transferring him from his command to his home did not embrace-a command to perform any military duty whatever. lie was simply ordered to his home to “ await orders,” and nothing more. In the case before us, Colhoun was ordered to proceed to his home “ to 'settle his accounts, and await orders.” Mr. Justice Hunt, in rendering the opinion of the court in the Phis-terer case, «aid: “We think the regulation we have referred to [Army Regulations established by the act of March, 1863J was not intended for a case like that we are considering— that is, where an officer is at his own home awaiting orders, and having no public duty whatever to perform.” Colhoun was on duty for thirty days at his home settling his accounts with the United States, and when this work was completed he reported to the Department for assignment to duty, while Phisterer was at his own home performing no public duty, and was simply awaiting orders. (Long v. United States, 8 C. Cls. R., 398; Lippitt v. United States, 100 U. S. R., 663.)
The decision of the court is that the claimant be allowed the sum of $60, in accordance with the findings of fact and conclusion of law.