Peelle, Ch. J.,
delivered the opinion of the court:
The claim herein is for property stolen and carried away by Comanche Indians December, 1866, from the claimant’s decedent, a Chickasaw Indian residing on the Chickasaw Reservation, for which indemnity is sought under article 14 of the treaty between the United States and the Choctaw and Chickasaw Indians, June 22, 1855 (11 Stat. L., 614), which reads:
“ The United States shall protect the Choctaws and Chickasaws from domestic strife, from hostile invasion, and from aggression by other Indians and white persons not subject to their jurisdiction and laws; and for all injuries resulting from such invasion or aggression full indemnity is hereby guaranteed to the party or parties injured, out of the Treasury of the United States, upon the same principle and according to the same rules upon which white persons are entitled to indemnity for injuries or aggressions upon them committed by Indians.”
That provision of the treaty was reaffirmed by articles 10 and 45 of the treaty between the same parties of April 28, 1866 (14 Stat. L., 774, 779).
The claim was first presented by the claimant’s decedent in December, 1868, to the agent of the Choctaw and Chickasaw Nation, supported by affidavits, but no final action appears to have been taken thereon by any officer or department of the Government. Thereafter (but on what date is not shown) the Commissioner of Indian Affairs appears .to have considered the case without any other action than recommending to the Secretary of the Interior the reference of the claim to the court under the provisions of section 2 of the act of March 3, 1883 (22 Stat. L., 485), which was done, as set forth in the findings, but whether by reason of controverted questions of law or fact does not appear other than by the terms of the *496 statute under, which the reference was made. Unlike the case of Oharles E. Campbell et al. (ante 517), however, decided contemporaneously with this, the claimant has appeared and filed his petition herein, averring the facts of the loss and adducing evidence in support thereof. We will, therefore, consider the case as involving controverted questions of fact and law.
As to the jurisdiction of the Secretary of the Interior to investigate and settle the claim,' as the basis of his right to transmit the same to the court, we considered that question in the Campbell ease, supra, holding that the Interior Department, having supervision and control of Indian affairs, had the authority to investigate claims of Indians for depredations committed upon their property by other Indians in violation of treaty obligations; and that section 13 of the act of March 3, 1891 (26 Stat. L., 851, 854), taking from the Interior Department the right to investigate Indian depredation claims in favor of citizens Of the United States under prior acts of Congress did not apply to depredations by Indians upon the property of other Indians in violation of treaty obligations, and that therefore the authority to investigate such claims is still lodged in the Interior Department under such-rules and regulations therefor as the Secretary may see fit to formulate under Eevised Statutes, section 466. When the Secretary has caused such investigation to be made and reached final action thereon, his result, whether for or against the allowance of such claim, is to be certified to the Treasury Department for final settlement and adjustment by the accounting officers under Eevised Statutes,’ section 236, to be followed by an estimate for an appropriation with which to pay any amount or balance found due such claimant. This course is in harmony with the decision of the assistant comptroller in'the case of Overton Love (YII Comp. Dec., 308).
This does not mean, however, that the Interior Department can relieve itself from the investigation of such claims except where there are controverted questions of law or fact, as under such reference the court can not be made the vehicle to perform judicial functions merely to relieve the department from the performance of its administrative obligation to *497 consider suqh claims on their merits. When such cases are transmitted to the court the reasons therefor should not only be stated in the letter of reference, but should have a real or substantial basis within the meaning of said section 2 of the act of March 3, 1883.
In the present case a controverted question of law appears, i. e., the authority of the Secretary of the Interior to investigate such claims; and in the consideration of that question we have also examined the evidence on the merits and find that some of-the property claimed for was taken as alleged, the reasonable value of which at the time and place of taking was $1,740, which amount the claimant is entitled to be paid by the United States under the provisions of the treaty of 1855 aforesaid.
The claimant in his petition herein asks the court to render judgment by virtue of section 13 of the act of March 3, 1887 (24 Stat. L., 505), which in substance provides that in cases so referred to the court under the act of March 3, 1883, “ if it shall appear to the satisfaction of the court, upon the facts established, that it has jurisdiction to render judgment or decree thereon under existing laws or under the provisions of this act, it shall proceed to do so.”
As this is a claim arising- under treaty stipulations the court is inhibited from taking jurisdiction thereof under Eevised Statutes, section 1066, unless that section is repealed by implication by section 1 of the act of March 3, 1887, conferring general jurisdiction upon the court; and though such repeal was suggested by this court in the cases of Cabal-los (42 C. Cls., 355) and Sanchez (ibid., 475), and later by the Supreme Court in the case of Juragua Iron Co. (212 U. S., 297), we deem it unnecessary now to pass upon that question, as, under the rulings of the Supreme Court, we do not believe the filing of the claim herein before the Indian agent operated to suspend the statute of limitations even if such claim was subsequently filed with the Commissioner of Indian Affairs. The jurisdictional restriction, however, of Eevised Statutes, section 1066, against the court’s considering claims growing out of treaty stipulations does not apply to cases transmitted under the Bowman Act for findings of *498 fact only, as we held in the case of Chickasaw Nation v. United States (22 C. Cls., 222, cited in 24 C. Cls., 261).
In the case of United States v. New York (160 U. S., 598, 619), after reviewing the cases of Finn v. United States (126 U. S., 227, 232); United States v. Lippitt (100 U. S., 663, 669); and De Arnaud v. United States (151 U. S., 483, 495), the court, by Mr. Justice Harlan, said: “ Upon the authority of those cases we adjudge that as the claim of New York was presented to the Treasury Department before it was barred by limitation, its transmission by the Secretary of the Treasury to the Court of Claims for adjudication was only a continuation of the original proceeding commenced in that department in 1862. The delay by the department in disposing of the matter before the expiration of six years after the cause of action accrued could not impair the rights of the State. Of course, if the claim had not been presented to the Treasury Department before the expiration of that period the Court of Claims could not have entertained jurisdiction of it.” The reference in that case was under Revised Statutes, section 1063; and so were all the cases referred to on the same subject. We think the jurisdiction of the court under both the treaty and the filing of the claim before the Indian agent is of sufficient doubt to justify the court in declining to adjudicate the claim herein to judgment.
It is ordered that a copy of the foregoing findings of fact and conclusion of law, together with a copy of this opinion, be certified .to the Secretary of the Interior for his guidance and action.