1997 ME 124

## Dale CLUKEY, Jr.

v.

## PISCATAQUIS COUNTY SHERIFF'S DEPARTMENT, et al.

Supreme Judicial Court of Maine.

Argued Feb. 5, 1997

Decided June 4, 1997.

---

a work-related injury on October 31, 1993, while working part-time for the Piscataquis County Sheriff's Department. His part-time weekly earnings from the County were $43.98. At the time of his injury, Clukey also had a full-time concurrent job as a staff sergeant with the Maine Air National Guard. His base pay from the Guard was $378.90 per week. In addition to his base pay, Clukey also received the following meal and housing allowances:

(1) *Basic Allowance for Subsistence* ("BAS") = $59.44 per week. The BAS is provided for the payment of meals for military personnel who do not receive meals at the base. 37 U.S.C. § 402 (1996).

(2) *Basic Allowance for Quarters* ("BAQ") = $103.87 per week. The BAQ is provided to military personnel who do not receive military housing and is calculated according to marital status and number of dependents. 37 U.S.C. § 403 (1996).

(3) *Variable Housing Allowance* ("VHA") = $21.59 per week. The VHA is provided to employees who do not receive military housing as a supplement to the BAQ. The VHA is calculated according to actual housing costs that the employee must certify annually. 37 U.S.C. § 403a (1996).

[¶ 3] Clukey filed a petition for award in 1994. There was no dispute that Clukey's wage should be calculated pursuant to 39–A M.R.S.A. § 102(4)(A), applicable to employment that continues longer than 200 days, or that his concurrent employment with the Guard should be included in the calculation pursuant to 39–A M.R.S.A. § 102(4)(E). The only dispute was whether the BAS, BAQ or VHA should be included in the wage. The Board granted the petition in August 1995, concluding that the allowances should be included in the average weekly wage. We granted the County's petition for appellate review pursuant to 39–A M.R.S.A. § 322.

■ [¶ 4] The County contends that the military allowances are a "special expense" pursuant to 39–A M.R.S.A. § 102(4)(F), providing that "[w]hen the employer has paid the employee a sum to cover any special expense incurred by the employee by the nature of the employee's employment, the

Wayne W. Whitney (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for employee.

Jane E. Skelton (orally), Michael P. Friedman, Rudman & Winchell, Bangor, for employer.

Before ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] The employer, Piscataquis County Sheriff's Department ("the County"), appeals from a decision of the Workers' Compensation Board granting the employee Dale J. Clukey's petition for award. The County contends that weekly allowances for meals and housing from his full-time concurrent employment with the National Guard should not be included in Clukey's average weekly wage. 39–A M.R.S.A. § 102(4)(F), (4)(H) (Supp.1996). We affirm the decision of the Board.

[¶ 2] The facts of this appeal are not in dispute. Clukey was totally incapacitated by

sum paid is not reckoned as part of the employee's wages, earnings or salary." 39–A M.R.S.A. § 102(4)(F). The County also contends that the allowances constitute "fringe or other benefits" and are therefore excludable pursuant to subsection 102(4)(H):

> H. "Average weekly wages, earnings or salary" does not include any fringe or other benefits paid by the employer that continue during the disability. Any fringe or other benefit paid by the employer that does not continue during the disability must be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount that is greater than ⅔ of the state average weekly wage at the time of the injury.

39–A M.R.S.A. § 102(4)(H).[1] We conclude that the BAS, BAQ and VHA are a basic part of Clukey's regular military compensation and therefore should be included in his average weekly wage.

[¶ 5] Title 37 U.S.C. § 101(25) expressly includes the BAS, BAQ and VHA in the statutory definition of the term "regular compensation." 37 U.S.C. § 101(25) (1996). Although the allowances are expressly excluded from the definition of the term "pay," 37 U.S.C. § 101(21) (1996), Congress enacted the statutory definition of the term "pay," Pub.L. No. 87–649, § 1, 76 Stat. 451 (1962), several years prior to its definition of the term "regular compensation," Act of Dec. 16, 1967, Pub.L. 90–207, § 8, 81 Stat. 649, 1967 U.S.Code Cong. & Admin. News (81 Stat.) 720–21; Act of Sept. 19, 1974, Pub.L. 93–419, § 1, 88 Stat. 1152 (codified at 37 U.S.C. § 101(25)). The history of military pay legislation suggests an evolution from the view

that military allowances for food and lodging are reimbursement for a necessary expense of military life,[2] to the modern view that these allowances are intended as compensation and an inducement to enlist.

[¶ 6] The BAS and BAQ were originally codified in the Career Compensation Act of 1949. Pub.L. 81–351, 63 Stat. 681, 1949 U.S.Code Cong. & Admin. News (63 Stat.) 815, 825–26. The purpose of the Act was two-fold: (1) To "establish[ ] a uniform pattern of military pay and allowances, consolidating and revising the piecemeal legislation that had been developed over the previous 40 years," *Frontiero v. Richardson*, 411 U.S. 677, 681, n. 6, 93 S.Ct. 1764, 1768, n. 6, 36 L.Ed.2d 583 (1973); and (2) "to establish for the uniformed services a compensation pattern which will tend to attract and retain first-class personnel in the armed services...." S.Rep. No. 733, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.Code Cong. & Admin. News 2089; *Frontiero*, 411 U.S. at 679–80, 93 S.Ct. at 1766–67.

[¶ 7] In 1967 Congress instituted regular military pay raises for the purpose of keeping pace with pay raises for civilian government employees, Act of Dec. 16, 1967, Pub.L. 90–207, § 8, 81 Stat. 649, 1967 U.S.Code Cong. & Admin. News (81 Stat.) 720, and "to insure that the uniformed services will continue to retain in sufficient numbers the skilled manpower so indispensable to the maintenance of our national security." S.Rep. 808, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Admin. News 2319–20. The 1967 pay increases were calculated as a percentage of an individual's "regular compensation," defined to include "basic pay, quarters and subsistence allowances (either in cash or in kind), and the tax

---

1. The County contends that because the inclusion of the BAQ, BAS and VHA as a fringe benefit would "result in a weekly benefit amount that is greater than ⅔ of the state average weekly wage at the time of the injury," those allowances must be excluded. Because we conclude that the allowances are not "fringe or other benefits" for purposes of subsection (H), we express no opinion concerning this contention.

2. An example of the early view can be found in *United States v. Phisterer*, 94 U.S. 219, 24 L.Ed. 116 (1876). In *Phisterer*, the United States Supreme Court denied a serviceman's claim for

commutation of quarters while awaiting orders at his home. *Id.* at 225. The Court stated:

> Quarters are expected to be furnished by the government to its officers; when it cannot thus furnish, it allows them to be obtained otherwise, and pays a money compensation therefore, called commutation. This is upon the assumption, first, that the officers are actually engaged in the public service; and, second, that such quarters are necessary to the discharge of their duty.

*Id.* at 224.

advantages on those allowances." Act of Dec. 16, 1967, Pub.L. 90–207, § 8, 81 Stat. 649, 1967 U.S.Code Cong. & Admin. News (81 Stat.) 721. The 1967 pay raise, however, was applied to increase the basic pay, but did not increase the allowances.

[¶ 8] In 1974 Congress enacted legislation to distribute the pay increases to the BAQ and the BAS. Act of Sept. 19, 1974, Pub.L. 93–419, § 4, 88 Stat. 1152 (codified at 37 U.S.C. § 1009). The legislative history of this enactment suggests that the allowances were considered at that time to be an important element of compensation and an inducement to enlist in the modern all-volunteer military. The purpose of the enactment was explained in the Letter of the Assistant Secretary of Defense to the President of the Senate, March 30, 1973:

> The President's goal of an all-volunteer force adds a new dimension to our annual appraisal of the adequacy of military pay. Military pay in general may be quantitatively determined to bear a reasonable relationship to the pay for similar work levels in the civilian economy. However, the question of adequacy can only be addressed in terms of whether military pay levels allow us to compete successfully in the labor market for the numbers and quality of individuals which fulfill Department of Defense manpower requirements....
>
>   ....
>
> ... [T]he basic characteristic of the present system of limiting adjustments exclusively to equal percentage increases in basic pay has caused most members to perceive their allowances at substantially below actual expenses in the economy. This reinforces a basic premise that so long as members of the armed forces are compensated under a basic pay and allowances system, it will be necessary to adjust periodically the allowances for quarters and subsistence in order to ensure that these elements of compensation are adequate to fulfill their intended purpose.

*reprinted in* 1974 U.S.Code Cong. & Admin. News at 5365–66.

[¶ 9] Current military pay practices reinforce our view that the BAS, BAQ and VHA are part of Clukey's regular military compensation. Clukey receives the BAS, BAQ and VHA as direct payments in cash along with his basic pay. Therefore, unlike traditional fringe benefit plans that involve employer contributions to employer-provided funds, *Clark v. Rust Eng'g Co.*, 595 A.2d 416, 420 (Me.1991), the government "totally relinquishes control over the [BAS, BAQ and VHA] funds" in Clukey's regular pay envelope. *Ashby v. Rust Eng'g Co.*, 559 A.2d 774, 775 (Me.1989). Once payment of the BAS, BAQ and VHA is made, he may spend the allowances when and where he chooses.

■ [¶ 10] The fact that the allowances are not considered income for federal tax purposes or considered in the calculation of retirement or severance pay is also not controlling. Our statutory definition of the average weekly wage is not limited by the federal definition of taxable income. *Fletcher v. Hanington Bros., Inc.*, 647 A.2d 800, 803, n. 4 (Me.1994). As we have stated, "[a]n employee's capacity to earn is not reduced by the fact that portions of the employee's compensation may be exempt from taxation. A Congressional decision to tax or not to tax may be based on a variety of reasons completely unrelated to the employee's capacity to earn." *Id.* Indeed, in the military pay context, the federal tax advantage pertaining to the allowances is an element in the definition of the employee's "regular compensation." 37 U.S.C.A. § 101(25). Similarly, a Congressional decision to include a component of compensation in the calculation of retired or severance pay may also be based on a variety of factors unrelated to the compensatory nature of that pay, and is also not controlling. 10 U.S.C. § 1212, 1401 (1996).

■ [¶ 11] We give deference to Board interpretations of the Workers' Compensation Act. *Mushero v. Lincoln Pulp & Paper Co.*, 683 A.2d 504, 506 (Me.1996). Because we conclude that the BAS, BAQ and VHA are a basic part of Clukey's regular military compensation, the Board's decision to include those allowances in Clukey's average weekly wage was not error.

The entry is:

Decision of the Workers' Compensation Board affirmed.

