1999 ME 172

**Peter HINCKS**

v.

**ROBERT MITCHELL CO. et al.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 1999.
Decided Nov. 24, 1999.

James G. Fongemie (orally), James J. MacAdam, McTeague, Higbee, MacAdam, Case, Cohen & Whitney, P.A., Topsham, for employee.

Thomas R. Kelly (orally), Elizabeth Eddy Griffin, Robinson Kriger & McCallum, for Maine Employers' Mutual.

Stephen Hessert (orally), Norman, Hanson & DeTroy, LLC, Portland, for Great American.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] The insurers, Great American Insurance Co. and Maine Employers' Mutual Insurance Co. ("MEMIC") appeal from a decision of the Workers' Compensation Board, granting the employee's petitions relating to work-injuries that occurred in 1985 and 1994. The insurers challenge the retroactive application of 39-A M.R.S.A. § 201(6) (Supp.1998), the apportionment of liability between insurers pursuant to 39-A M.R.S.A. § 354 (Supp.1998), and the inclusion of fringe benefits in the employee's average weekly wage. We vacate that decision.

[¶ 2] The employee, Peter Hincks, suffered two injuries while employed by Robert Mitchell Co., d/b/a Douglas Brothers. The first injury occurred on November 20, 1985, while Douglas Brothers was insured by Great American. The second injury occurred on May 9, 1994, while Douglas Brothers was insured by MEMIC. The employee's average weekly wage at the time of his 1994 injury was $717.37, based on an hourly rate of $23.06. A portion of that hourly rate consisted of $5.60 in employer-contributions to union-established benefit funds, which included: a $3.00 contribution to a health and welfare fund; a $1.60 contribution to a pension fund; and a $1.00 contribution to a local annuity fund.

[¶ 3] Hincks filed several petitions with the Board in 1994 seeking compensation for the two injuries. The Board granted the petitions in 1997 awarding ongoing seventy-two percent partial incapacity benefits. Although the Board found a causal relationship between the employee's incapacity and both dates of injury, the Board ordered the most recent insurer, MEMIC, to pay all incapacity benefits pursuant to 39-A M.R.S.A. § 354. The Board also concluded, however, that "payments for medical service related to his back injury are to be divided equally between the two carriers; payments for treatments related to Mr. Hincks' depression/anxiety are solely the responsibility of the May 9, 1994 date of injury." Finally, relying on *Ashby v. Rust Eng'g Co.*, 559 A.2d 774, 775 (Me. 1989), the Board concluded that the employer-contributions to employee benefit funds were not fringe benefits, but more akin to bargained-for, dollar-for-dollar contributions on behalf of an employee, and, therefore, should be treated as part of the employee's average weekly wage.

[¶ 4] All parties filed motions for further findings of fact and conclusions of law following the Board's decision in 1997. While the motions were pending, the Legislature enacted P.L.1998, ch. 647 (effective June 30, 1998), *codified at* 39-A M.R.S.A. § 201(6).[1] In its subsequent decision in response to the motions for findings of fact, the Board concluded that subsection

---

1. Subsection 201(6) provides:

    **6. Prior work-related injuries.** If an employee suffers a work-related injury that aggravates, accelerates or combines with the effects of a work-related injury that occurred prior to January 1, 1993 for which compensation is still payable under the law in effect on the date of that prior injury, the employee's rights and benefits for the portion of the resulting disability that is attributable to the prior injury must be determined by the law in effect at the time of the prior injury.

39-A M.R.S.A. § 201(6).

201(6) applied to the pending proceeding, and that Hincks is therefore entitled to inflation adjustment for that portion of his incapacity attributable to his 1985 injury.[2] We granted both insurers' petitions for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1998).

[¶ 5] We agree with the insurers that the Board's decision to apply subsection 201(6) to a proceeding pending on the effective date of the statute was error pursuant to our recent decision in *Loud v. Kezar Falls Woolen Co.*, 1999 ME 118, ¶ 11, 735 A.2d 965, 969. Because the Legislature chose not to make subsection 201(6) applicable to matters pending at the time of the amendment's enactment, the liabilities of the parties are governed by our decision in *Ray v. Carland Constr., Inc.*, 1997 ME 206, ¶ 4, 703 A.2d 648, 650. Pursuant to *Ray*, when more than one injury contributes to an employee's incapacity and the most recent injury occurred after the effective date of title 39–A, the employee's entitlement to benefits is governed exclusively by title 39–A. *Id.* Accordingly, because title 39–A does not provide an inflation adjustment for partial benefits, Hincks is not entitled to an inflation adjustment for any portion of his incapacity.

[¶ 6] Great American contends further that, pursuant to section 354 and *Rosetti v. Land Reclamation*, 1997 ME 197, ¶ 5, 704 A.2d 312, 313, the Board had no authority to apportion medical benefits on a 50%/50% basis. We agree. Subsection 354(2) unmistakably provides that "the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act." 39–A M.R.S.A. § 354(3). After liability is assessed against the most recent insurer, that insurer is entitled to proceed against the previous insurers pursuant to section 354 for an apportionment. 39–A M.R.S.A. § 354(3); *Rosetti*, 1997 ME 197, ¶ 5, 704 A.2d at 313. As we stated in *Rosetti*, subsection 354(3) provides that apportionment before the Bureau of Insurance is the "exclusive means" of resolving apportionment issues between insurers.[3] We conclude that the Board lacked authority to determine an apportionment of medical benefits between the insurers.

[¶ 7] MEMIC also contends that the Board erred in placing sole responsibility for the psychological condition on the 1994 injury. As we have stated, "[w]e give deference to the factual findings of the [Board], particularly when those findings require an evaluation of medical evidence." *See Mathieu v. Bath Iron Works*, 667 A.2d 862, 864 (Me.1995). Accordingly, we decline to disturb this factual finding on appeal.

[¶ 8] Finally, MEMIC contends that the Board erred in concluding that the employer-payments to union-established funds were not fringe benefits. Paragraph 102(4)(H) provides:

> H. "Average weekly wages, earnings or salary" does not include any fringe or other benefits paid by the employer that continue during the disability. Any fringe or other benefit paid by the employer that does not continue during the disability must be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount

---

2. The Board declined, however, to determine the contribution attributable to each injury, concluding that it lacked authority to determine an apportionment pursuant to our decision in *Rosetti v. Land Reclamation*, 1997 ME 197, ¶¶ 5–6, 704 A.2d 312, 313. Hincks contends that, notwithstanding our decision in *Rosetti*, the Board is required to determine an apportionment pursuant to subsection 201(6). Because we conclude that subsection 201(6) does not apply, it is not necessary to address this issue in the present appeal.

3. Subsection 354 was recently amended to permit the Board to determine apportionment. P.L.1999, ch. 354, § 9 (effective September 18, 1999). The parties do not contend that the recently amended subsection 354 applies to this appeal.

that is greater than ⅔ of the state average weekly wage at the time of the injury.

39-A M.R.S.A. § 102(4)(H) (Supp.1998). MEMIC argues that, because the employer-contributions are a fringe benefit and because the inclusion of those contributions increases the employee's weekly benefits above two-thirds of the state average weekly wage at the time of his injury, the employer is entitled to a limited reduction in benefit payments pursuant to paragraph 102(4)(H). *See, e.g., O'Neal v. City of Augusta,* 1998 ME 48A, ¶¶ 4–6, 706 A.2d 1042, 1043–44.

[¶ 9] There is no dispute that the employer-contributions are identical to those in *Ashby,* 559 A.2d at 775. In *Ashby,* we held that employer payments to union-negotiated funds must be included in the average weekly wage when the benefits are paid out of bargained-for, dollar-for-dollar deductions from the employee's pay. *Id.* As MEMIC suggests, however, shortly after our decision in *Ashby,* the Legislature enacted P.L.1991, ch. 615, § A–20, providing that fringe benefits may not be included in an employee's average weekly wage. P.L.1991, ch. 615, § A–20, *codified as* 39 M.R.S.A. § 2(2)(G) (Supp.1991), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8.[4] As we have stated, paragraph 2(2)(G) was enacted with the express legislative purpose of reversing the effects of our decision in *Ashby* in future cases. *See Ciampi v. Hannaford Bros. Co.,* 681 A.2d 4, 9 (Me.1996); *Tompkins v. Wade & Searway Constr. Corp.,* 612 A.2d 874, 876 (Me.1992).

[¶ 10] Notwithstanding the enactment of paragraph 2(2)(G), Hincks contends that the *Ashby*-type benefit plan is a "special case" that is unaffected by the subsequent statutory amendments intended to affect fringe benefits. Hincks contends that because the *Ashby*-plan involves an election by the employee's labor union to spend a portion of the employee's ordinary pay for union-established benefit funds, the employer-contributions are more akin to actual wages than traditional fringe benefit plans. Hincks relies primarily on our decisions in *Fletcher v. Hanington Bros., Inc.,* 647 A.2d 800, 803 (Me.1994), holding that the employee's voluntary deductions from weekly pay for purchase of family health insurance are not fringe benefits, and *Clukey v. Piscataquis County Sheriff's Dept.,* 1997 ME 124, ¶¶ 9–10, 696 A.2d 428, 431, holding that certain military meal and housing allowances are not "fringe or other benefit[s]" for purposes of paragraph 102(4)(H).

[¶ 11] Contrary to the employee's assertions, our decisions in *Fletcher* and *Clukey* are not directly controlling in the present case. Our decision in *Fletcher,* 647 A.2d at 801, was governed by the law at the time of *Ashby,* and involved neither paragraph 102(4)(H) nor former paragraph 2(2)(G). Our decision in *Clukey,* 1997 ME 124, ¶¶ 6–8, 696 A.2d at 430–31, moreover, hinged on the unique legislative history and purpose of the federal military compensation statutes. More importantly, the housing and food allowances at issue in *Clukey* were not payments made to third-parties as contributions to a benefit plan, but payments in cash made directly to the employee along with his base pay. *Id.* at ¶ 9, 696 A.2d at 431.

■ [¶ 12] The employee argues that the Legislature could not have intended to exclude from the average weekly wage funds that an individual employee might contribute from his wages to the direct purchase of family medical insurance as in *Fletcher.* In the present case, however,

---

**4.** Former paragraph 2(2)(G) provided as follows:

"Average weekly wages, earnings or salary" does not include fringe benefits, including but not limited to employer payments for or contributions to a retirement, pension, health and welfare, life insurance, training, social security or other employee or dependent benefit plan for the employee's or dependent's benefit or any other employee's dependent entitlement.

39 M.R.S.A. § 2(2)(G) (Supp.1991).

there is no room for doubt. The legislative response to *Ashby,* in former 39 M.R.S.A. § 2(2)(G) and the subsequent enactment of paragraph 102(4)(H), reflects an unmistakable legislative intent to include the *Ashby*-type benefit plan within the meaning of a "fringe *or other* benefit" as referred to in paragraph 102(4)(H). 39–A M.R.S.A. § 102(4)(H) (emphasis added). We conclude that the $5.60 an hour employer-contribution to the employee's benefit plan is excluded from average weekly wage by operation of subsection 102(4)(H). MEMIC is therefore entitled to a limited reduction of compensation to the extent that the inclusion of those contributions increase the employee's weekly benefit amount above two-thirds of the state average weekly wage at the time of the injury. *See O'Neal,* 1998 ME 48A, ¶¶ 4–6, 706 A.2d at 1043–44.

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

