2011 ME 71

**Scott HACKETT**

v.

**WESTERN EXPRESS, INC., et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 8, 2011.

Decided: June 23, 2011.

---

James J. MacAdam, Esq., Nathan A. Jury, Esq. (orally), David E. Hirtle, Esq., MacAdam Law Offices, P.A., Portland, ME, for Scott Hackett.

C. Lindsey Morrill, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for Western Express, Inc. and Gallagher Bassett Services.

Panel: SAUFLEY, C.J., and ALEXANDER,* LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶1] Scott Hackett appeals from a decision of a Workers' Compensation Board hearing officer (*Stovall, HO*) awarding him incapacity benefits for an injury incurred while working as a truck driver for Western Express, Inc. When calculating average weekly wage, the hearing officer excluded the nine cents per mile Hackett received as "per diem pay," concluding that it was paid to cover "special expenses," which, pursuant to 39–A M.R.S. § 102(4)(F) (2010), are not to be included in average weekly wage. We affirm the hearing officer's decision on this issue, but

---

* Although not available at oral argument, Justice Alexander participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "quali-fied justice may participate in a decision even though not present at oral argument").

remand for a recalculation of Hackett's fringe benefits pursuant to Me. W.C.B. Rule, ch. 1, § 5(1).

## I. BACKGROUND

[¶ 2] Hackett began working for Western Express as a long distance truck driver in March 2008. Western Express did not pay Hackett a salary but instead paid him thirty-one cents per mile, which included nine cents per mile "per diem pay" intended to cover lodging, meals, telephone calls, and showers while on the road. Although Hackett received one weekly paycheck, the per diem pay was designated separately on his pay stub because it is not considered to be taxable income. *See* 26 U.S.C.S. § 62 (LexisNexis 2011); Rev. Proc. 2007–63, 2007–42 I.R.B. 809. The pay stub he produced at the hearing shows that for that particular week, he received $219 in per diem payments. There were no restrictions on how he could spend the per diem payments, and he did not have to provide receipts either to the employer or the Internal Revenue Service to document that he used the per diem for any specified purpose. *See* 26 U.S.C.S. § 62; Rev. Proc. 2007–63, 2007–42 I.R.B. 809. Hackett testified that to save money while on the road, he generally slept in the sleeper compartment of his truck, packed sandwiches in a cooler, and stopped for only one meal per day in a restaurant.

[¶ 3] In June 2008, Hackett aggravated a pre-existing low back injury while driving for Western Express. His doctor took him out of work, and Western Express terminated his employment shortly thereafter for reasons unconnected to his injury.

[¶ 4] Hackett filed a petition for award and, after a hearing, was awarded ongoing partial incapacity benefits[1] for what the hearing officer found was a gradual injury to his lower back. At issue in this appeal is whether the per diem payments should have been included in Hackett's average weekly wage. The hearing officer determined that Western Express paid the per diem to cover "special expenses," which, pursuant to 39–A M.R.S. § 102(4)(F), are not included in average weekly wage. The hearing officer also concluded that the per diem payments were not a fringe benefit that could be included to a limited extent in average weekly wage. *See* 39–A M.R.S. § 102(4)(H) (2010).

## II. DISCUSSION

### A. Special Expenses

[¶ 5] Hackett contends that the hearing officer erred when excluding the nine cents per mile from average weekly wage as a "special expense" pursuant to 39–A M.R.S. § 102(4)(F). He asserts that the per diem payments did not correlate with his actual expenses, were not subject to any restrictions on how they could be used, and represented economic gain to him; therefore, they should be considered part of his compensation and included in his average weekly wage.

[¶ 6] "Average weekly wage"[2] is defined generally as "the amount that the employee was receiving at the time of the injury for the hours and days constituting a regular full working week in the employment or occupation in which the employee was engaged when injured." 39–A M.R.S.

---

1. Due to a "fourteen-day rule" violation, which is not at issue on appeal, the hearing officer also awarded Hackett a period of total wage loss benefits. *See* Me. W.C.B. Rule, ch. 1, § 1.

2. In general, workers' compensation benefits are calculated as 80% of the difference between an employee's after-tax average weekly wage at the time of the injury and the employee's post-injury earning capacity, capped at the statutory maximum level. 39–A M.R.S. §§ 212, 213 (2010).

§ 102(4)(A) (2010). If any part of the compensation an employee receives for working a regular full working week constitutes reimbursement for special expenses, however, that amount is not included in the calculation of average weekly wage, pursuant to 39–A M.R.S. § 102(4)(F), which provides:

> When the employer has paid the employee a sum to cover any special expense incurred by the employee by the nature of the employee's employment, the sum paid is not reckoned as part of the employee's wages, earnings or salary.

[¶ 7] Hackett asserts that our decision should be controlled by *Clukey v. Piscataquis County Sheriff's Department*, 1997 ME 124, 696 A.2d 428. In that case, we held that certain military allowances for off-base housing and food were not special expenses and could be included in average weekly wage. *Id.* ¶ 1, 696 A.2d at 429. Contrary to Hackett's position, *Clukey* is distinguishable because it involved the application of federal statutes that specifically designated the military allowances as compensation. *See id.* ¶ 5, 696 A.2d at 430. No similar statute exists that would require us to consider Hackett's per diem payments as wages.

[¶ 8] The hearing officer found that the per diem payments that Western Express made to Hackett were "for lodging, meals, and telephone calls," and concluded that they were paid to cover special expenses and must be excluded. A representative of Western Express testified that the amount designated as a per diem payment is consistent with the amount recognized by the Internal Revenue Service to approximate the expenses incurred by long-haul truck drivers that may, without documentation of actual expenses, be excluded from the drivers' incomes for purposes of federal income taxation.[3] *See* Rev. Proc. 2007–63, 2007–42 I.R.B. 809.

[¶ 9] The hearing officer's findings of fact are final, 39–A M.R.S. §§ 318, 322(3) (2010), and we defer to the hearing officer's interpretation of the Workers' Compensation Act as within the Board's area of special expertise, *St. Mary's Regional Medical Center v. Bath Iron Works*, 2009 ME 92, ¶ 7, 977 A.2d 431, 433. Because the hearing officer found that the per diem payments were intended to cover lodging, meals, and telephone calls, expenses that would be incurred by truck drivers due to the nature of their employment, the hearing officer did not err in concluding that the per diem payments were made to cover Hackett's special expenses or by excluding the per diem payments from the calculation of his average weekly wage pursuant to section 102(4)(F).

[¶ 10] Hackett contends in the alternative that the per diem payments should be considered fringe benefits and included in average weekly wage to the extent allowed pursuant to 39–A M.R.S. § 102(4)(H). Although the value of fringe benefits may be included in average weekly wage to a limited extent, *see* 39–A M.R.S. § 102(4)(H), the hearing officer concluded that the payments at issue in this case are not fringe benefits, *see* Me. W.C.B. Rule, ch. 1, § 5(1)(B)(6) (excluding "reimbursements for travel, parking, etc." from consideration as fringe benefits). The hearing officer did not err in determining that the per diem payments were not fringe benefits and thus not includable to any extent in average weekly wage.

---

**3.** Although federal law does not control how we define average weekly wage, *see Clukey v. Piscataquis Cnty. Sheriff's Dep't*, 1997 ME 124, ¶ 10, 696 A.2d 428, 431, the Internal Revenue Code and regulations regarding exclusion of certain expenses from income are not inconsistent with the exclusion of special expenses from average weekly wage pursuant to 39–A M.R.S. § 102(4)(F) (2010).

## B. Fringe Benefit Calculation

[¶ 11] Hackett also contends that the hearing officer erred by using Western Express's actual cost to calculate the value of his health and dental insurance at $4.65 per week. Chapter 1, § 5(1) of the Maine Workers' Compensation Board's Rules requires that for those companies that self-fund health and dental coverage, the value of those fringe benefits be calculated as "the cost to the employee for maintaining such coverage pursuant to the federal C.O.B.R.A. provisions less the employee's pre-injury contributions." Me. W.C.B. Rule, ch. 1, § 5(1). Western Express, which self-funds the coverage, concedes the error, and acknowledges that the correct fringe benefit figure is $39.19 per week. On remand, the hearing officer should recalculate the value of Hackett's fringe benefits based on Rule, ch. 1, § 5(1).

The entry is:

The portion of the Workers' Compensation Board hearing officer's decision calculating the value of fringe benefits is vacated, and the case is remanded for a recalculation of fringe benefits consistent with this opinion. Decision affirmed in all other respects.