CLAUDE B. DAVID-ZIESENISS, Plaintiff, *v.* CHARLES O. ZIESENISS, Defendant.

Supreme Court, Special Term, New York County, March 17, 1954.

*Alexis Coudert* and *A. Michael Frothingham* for defendant.

*Leroy E. Rodman* for plaintiff.

WALTER, J. The complaint in this action for divorce alleges that the parties were married in New York on or about June 27, 1940, and lived together in New York for several years thereafter, and that defendant (husband) committed adultery in France in 1948, 1949, 1950, 1951, and 1953. The summons was served by publication pursuant to an order made October 21, 1953, upon the complaint and an affidavit by plaintiff in which she stated that defendant is either not a resident of New York or if a resident has been continuously without the State for more than six months and cannot be served within the State but may be found and served at 32 Boulevard Suchit, Paris, France.

On October 21, 1953, another order was made sequestrating the property of defendant within the State and appointing a receiver thereof.

Defendant moves to vacate both orders, to set aside the alleged service of the summons made thereunder, and to dismiss the complaint, upon the ground that the court has no jurisdiction of the subject of the action.

The complaint contains the further allegation, upon information and belief, that defendant regards both plaintiff and himself as having been resident in New York at the times of the commission of the acts of adultery set forth in the complaint. That, however, quite obviously is not an allegation that either party was a resident of New York when the offense was committed; and as there is no allegation of that fact or any allegation that either party is now a resident of New York, the court's jurisdiction rests solely upon the fact that the parties were married in New York and lived here together for several years.

Section 1147 of the Civil Practice Act contains the specific and express provision that a husband or wife may maintain an action against the other party to the marriage to procure a judgment divorcing the parties by reason of the defendant's adultery " *where the parties were married within this state.*" (Emphasis supplied.)

Defendant nevertheless makes a twofold argument. First, he asserts that that provision does not mean what it says; and second, he asserts that if the provision be construed as meaning what it says, then it is unconstitutional. Defendant does not say, however, what provision of what constitution he claims is violated, beyond the very general statement that if interpreted as meaning that divorce jurisdiction may be grounded on the fact that the parties were married in this State when both parties reside or are domiciled elsewhere at the time of the commencement of the action, the statute " would violate the Constitution of the United States ".

Some apparent support for the first branch of defendant's argument will be found in statements in the opinions in *Gray* v. *Gray* (143 N. Y. 354, 357); *Powell* v. *Powell* (211 App. Div. 750, 757); *Barber* v. *Barber* (89 Misc. 519) and *Huneker* v. *Huneker* (57 N. Y. S. 2d 99, 100), in which able and distinguished judges have expressed difficulty in believing that the Legislature has enacted something contrary to what they thought should be enacted, or a difficulty in accepting the Legislature's enactment as a real expression of the public policy of the State.

But I discover no holding that the statute does not mean what it says, and neither do I discover any reason for doubting that the language " where the parties were married within this State " is a perfectly clear, unambiguous, and unmistakable expression that the Legislature means that marriage in this State is enough to give the courts of this State jurisdiction of an action for divorce and that that consequently is the public policy of this State. *Becker* v. *Becker* (58 App. Div. 374) holds that the fact of marriage in this State gives jurisdiction of an action to annul that marriage, and the necessary implication is, I think, that that fact likewise gives jurisdiction of an action for divorce. (See, also, *Schildkraut* v. *Schildkraut,* 226 App. Div. 747, and *Ackerman* v. *Ackerman,* 200 N. Y. 72, 76.)

I think, too, that that view is reinforced and required by the history of the statute.

In 1787, it was enacted that the Chancellor might grant divorces " where the parties are inhabitants of this State " (L. 1787, ch. 69).

In 1813, it was enacted that the Chancellor might entertain bills for divorce, first, where the parties were inhabitants of this State at the time of the adultery, second, when the marriage was solemnized in New York and the injured party was a resident in this State both at the time of the adultery and when he or she brought the proceedings. (2 Van Ness & Woodworth, Rev. L. [1813], ch. 102, p. 197.)

The Revised Statutes of 1830 contained the provision that a divorce might be decreed in New York " Where the marriage has been solemnized, or has taken place within this state, *and* the injured party, at the time of the commission of the offense, and at the time of exhibiting the bill of complaint, shall be an actual inhabitant of this state " (Rev. Stat. of N. Y., part II, ch. VIII, tit. I, art. third, § 38).

It was then by chapter 246 of the Laws of 1862, that that provision of the Revised Statutes was amended to read " Where the marriage has been solemnized or has taken place within this state, or where the injured party at the time of the commission of the offense and at the time of exhibiting the bill of complaint shall be an actual inhabitant of this state."

Marriage within the State as a fact conferring jurisdiction to grant divorce thus was not introduced into the law by chapter 246 of the Laws of 1862. Marriage within the State coupled with residence within the State was a ground for jurisdiction from 1813 to 1862, and the sole purpose of the 1862 amendment was

to make marriage within the State, without the additional fact of residence within the State, a fact which in and of itself, without more, conferred jurisdiction. Chapter 69 of the Laws of 1787, and chapter 246 of the Laws of 1862, were repealed by chapter 65 of the Laws of 1909, but by that time the provision that mere marriage within the State, without residence here, gives jurisdiction to grant divorce had been carried into the Code of Civil Procedure (§ 1756), which was then carried into and is now contained in section 1147 of the Civil Practice Act.

Continuously since 1862, therefore, it has been the statutory law of New York that marriage within the State is, in and of itself and without more, a fact which gives jurisdiction to grant divorce.

Now, over ninety years later, it is seriously contended, apparently for the first time, that the statute conferring such jurisdiction is unconstitutional.

The great length of time the statute has stood upon the books without challenge to its constitutionality is of itself a strong argument against the challenge (*Ownbey* v. *Morgan,* 256 U. S. 94; *Coler* v. *Corn Exch. Bank,* 250 N. Y. 136, affd. *sub nom. Corn Exch. Bank* v. *Commissioner,* 280 U. S. 218); but in addition to that, the whole subject of domestic relations is left by the United States Constitution entirely to the States (*Matter of Burrus,* 136 U. S. 586, 593, 594; *Popovici* v. *Agler,* 280 U. S. 379, 383; *Williams* v. *North Carolina,* 325 U. S. 226, 233) and I hence do not see how any State statute regulating the jurisdiction of State courts over domestic relations even could be thought to violate the Federal Constitution (see *Gasquet* v. *Lapeyre,* 242 U. S. 367, 369; *Iowa Central Ry.* v. *Iowa,* 160 U. S. 389, and *Missouri* v. *Lewis,* 101 U. S. 22).

How jurisdiction over a particular defendant in a particular action is to be acquired is, of course, a different question — one which goes to the very heart of due process — and State statutes on that subject, of course, may and frequently do present many questions under the Constitution of the United States. For the moment I confine myself to the validity of a State statute which says that marriage within the State gives the courts of that State jurisdiction of a suit to dissolve that marriage. I will then consider separately whether the steps taken in this particular action are sufficient to give jurisdiction over the person of this defendant, although in the end I may find that the answer to the first question will dictate the answer to the second question.

In cases too numerous to mention the statement has been made that jurisdiction of divorce depends upon domicile. Text writers and commentators have repeated the statement; and even in sections 110 and 111 in the Restatement of Conflict of Laws it is said: '' A state can exercise through its courts jurisdiction to dissolve the marriage of spouses both domiciled in the state '' and '' A state cannot exercise through its courts jurisdiction to dissolve a marriage when neither spouse is domiciled within the state.''

Yet, I believe that in every case in which the statement was made, it was made in connection with the effect of the divorce decree in another jurisdiction or as an estoppel or in connection with the validity of service of process outside the State in which the action was brought. Not a single case has been found in which a statute giving jurisdiction on the ground that the marriage took place in the State where the action was brought was held invalid or even questioned. Neither have I discovered any case which mentions any provision of any Constitution which makes jurisdiction of divorce dependent upon domicile in the divorcing State or excludes marriage in the State as a permissible ground for jurisdiction.

As a generally accepted rule of conflict of laws (i.e., that body of principles which governs the choice of the law applicable to a given case) domicile of one of the spouses in a State gives that State jurisdiction of divorce; and in many reported cases there was no ground other than domicile upon which jurisdiction could rest. In such cases it, of course, was entirely accurate to say that jurisdiction depended or was founded upon domicile. But to assert generally and broadly that jurisdiction of divorce depends or is founded upon domicile, in such a way as to imply that jurisdiction cannot be founded upon any other fact, is simply to say something which is palpably contrary to the statutory law of New York as it has existed for over ninety years and contrary, also, to *Gould* v. *Gould* (235 N. Y. 14, 16) in which our Court of Appeals went so far as to recognize as valid here a foreign decree of divorce rendered in a place (France) where it said neither spouse was domiciled. And the court so held despite the fact that the contention was pressed upon it that domicile is essential to jurisdiction to grant a divorce.

Of the statement made in *Williams* v. *North Carolina* (325 U. S. 226, 228, 229), with respect to domicile as a foundation of jurisdiction of divorce, it must be said (as was said in that opinion with respect to another utterance of another justice

of that court in another case) that the utterance was " too loose ". One wonders, too, what " system of law " Mr. Justice FRANKFURTER had in mind in making that statement, for we as a nation do not have a " system of law " with respect to domestic relations. On that subject each State has, and constitutionally must have, its own system of law, as Mr. Justice FRANKFURTER himself specifically pointed out in that same opinion (*Williams* v. *North Carolina,* 325 U. S. 232, 233, *supra*). One wonders, also, whether, in making the statement he made, Mr. Justice FRANKFURTER was merely unaware of *Gould* v. *Gould* (*supra*), or whether he intended to say that the New York Court of Appeals is not an English-speaking court.

The Restatement's own comments upon its sections 110 and 111 of Conflict of Laws, show that what actually was in mind in those sections was the effect of the divorce decree in another State; and the New York annotations to sections 110 and 111 explicitly state that section 111 is inconsistent with *Gould* v. *Gould* (*supra*).

Even *Jennings* v. *Jennings* (251 Ala. 73) and *Alton* v. *Alton* (207 F. 2d 667, 677, 670), upon which defendant particularly relies, and which undoubtedly inspired this motion, do not deal with the validity of a statute making marriage in the State a ground for jurisdiction or with any situation involving a marriage within the State in which the divorce action was brought.

In *Jennings* v. *Jennings* (*supra,* p. 74), both husband and wife resided in South Carolina. The wife sued in Alabama. The husband appeared and answered and submitted himself to the jurisdiction of the Alabama court. Alabama had a statute which required that the plaintiff in a divorce action should be a bona fide resident of Alabama for one year before bringing suit, but that that requirement should not be of force or effect " when the Court has jurisdiction of both parties to the cause of action." The wife's suit, nevertheless, was dismissed upon the theory that the court had no jurisdiction. But as there was no showing of any fact which under any Alabama statute gave any Alabama court jurisdiction of the suit, the holding seems to mean no more than that consent to jurisdiction over one's person does not confer jurisdiction over subject matter. Still more simply stated, the holding seems to be no more than that two residents of South Carolina cannot go to Alabama and get a divorce by consent.

*Alton* v. *Alton* (*supra*) is not essentially different, for there a wife left her home in Connecticut, went to the Virgin Islands, and brought suit for divorce after being there for six weeks and one day, and her husband appeared, waived service of the summons, and did not contest her suit; and her suit was dismissed. The legislative assembly of the Virgin Islands had enacted a statute which, as construed in *Burch* v. *Burch* (195 F. 2d 799), required domicile there as a prerequisite to the granting of a divorce. It then had additionally provided that presence in the Islands at the time of bringing suit and for six weeks immediately prior thereto should be prima facie evidence of domicile. The United States Court of Appeals for the Third Circuit held that there is no such a rational connection between six weeks' physical presence in a place and domicile in that place as to make it competent for a Legislature to make such presence presumptive evidence of domicile. The case was thus left without evidence of either domicile or of any other fact which gave any court of the Virgin Islands any jurisdiction to grant a divorce, and the court well could have stopped with a declaration of the obvious, i.e., that consent to jurisdiction over the person does not give jurisdiction over subject matter, and that two residents of Connecticut may not go to the Virgin Islands and get a divorce by consent. The prevailing opinion in the case goes on to say, however, that the statute conflicted with the due process clause of the Fifth Amendment of the Constitution of the United States and of the Organic Act of the Virgin Islands (U. S. Code, tit. 48, § 1405 *et seq.*); and as the court previously had said that it would treat the statute of the legislative assembly of the Virgin Islands as if it were the enactment of a State Legislature, the opinion gives room for argument that the court there in effect asserted that domicile in the divorcing State is an essential of due process of law.

If so interpreted, the decision, I think, is plainly contrary to *Gasquet* v. *Lapeyre* (242 U. S. 367, *supra*); *Iowa Central Ry.* v. *Iowa* (160 U. S. 389, *supra*); *Missouri* v. *Lewis* (101 U. S. 22, *supra*), and *Gould* v. *Gould* (235 N. Y. 14, *supra*) and for that reason I would be unable to follow it. I do not believe, however, that the opinion was intended to assert such a heresy. I believe that the more reasonable interpretation of it is that its reference to due process means, not that a statute making something other than domicile a basis of jurisdiction to divorce would deny due process to somebody, I do not know who, but that a decree of divorce granted by a court which had no jurisdiction of divorce

would deny due process to the person against whom the decree ran.

Domicile is accepted as a basis of jurisdiction to divorce because a State has a legitimate interest in the marital status of persons domiciled within its borders; and it seems clear to me that the State in which a marriage takes place has certainly as great and as legitimate an interest in the marital status of the parties to that marriage, and that marriage in a State consequently is as good a basis of jurisdiction of divorce as is domicile of one of the parties in the State.

One of the most widely accepted rules of the law is that the validity of a marriage is determined by the law of the place where it is contracted— that a marriage valid where made is valid everywhere (38 C. J., Marriage, p. 1276; 55 C. J. S., Marriage, p. 811; *Shea* v. *Shea,* 294 N. Y. 909), and as the law of that place determines the validity of the marriage, I cannot see why that place is not, also, at least an appropriate place for determining whether or not and for what causes that marriage may be dissolved.

For a variety of other purposes, also, the law of the place where a marriage takes place determines many of the rights and obligations of the parties, as, for example, the rights each acquires in the property which the other had and thereafter acquires.

Furthermore, in what certainly must be a large percentage of cases, the place where a marriage takes place is the place where the parties establish their home and the place where their children are born; and even where they both thereafter leave that place and go their respective ways in different places, the fact that they were married in a particular place seems to me to supply a nexus between those persons and that place which is at least as intimate and permanent as the domicile of either one of them in any other State would supply between them and that place.

In saying that, I am not adopting what some text writers and commentators have called the contractual theory of marriage, or the penal theory of marriage, in preference to the status theory of marriage (see Dicey on Conflict of Laws [5th ed.], 1932, Appendix, pp. 921–924; Howe, Recognition of Foreign Divorce Decrees in New York, and 40 Col. L. Rev. 373, 389–403). Marriage is of course a contract. Our law specifically so declares (Domestic Relations Law, § 10; *Fisher* v. *Fisher,* 250 N. Y. 313,

316) ; but it is also a peculiar sort of contract in that the parties cannot undo it by themselves; and it is also something more than a contract in that it creates a status of great importance to society and one in which society is greatly and intimately concerned; and I am not implying, but, on the contrary, reject the notion that divorce is a rescission of the marriage contract for reasons or on terms which the parties agreed upon at the time of the marriage. Divorce is a dissolution of the marriage contract for reasons and on terms which the law imposes upon the parties; and what I am saying is that the place where a marriage is performed has such a relation to those persons as respects their marital status as gives to that place an interest in their marital status great enough to enable that place to dissolve that contract and that status.

As to the so-called '' penal theory '' mentioned by Dicey and Howe, I think it sufficient to say that, although in a sense divorce is a penalty for violation of the marriage contract, it seems to me more accurate to say that it is a penalty for violation of the law's commands with respect to the obligations of persons who are married.

I think it probably is accurate to say that no person approves the perplexing confusion and uncertainty which have arisen from migratory divorce; and as the legal question before me must ultimately turn, as I see it, upon the view taken as to the existence and extent of a State's interest in the marital status of persons who marry within its borders, and to that extent involves sociological as well as strictly legal considerations, it seems proper to call attention to the fact that migratory divorce, and all the perplexing confusion and uncertainty which attend it, stem completely from the importance thus far attributed to the varying, changing, largely subjective and difficult to prove thing we call domicile, and if in lieu of domicile there could be substituted, as the foundation of divorce jurisdiction, the definite, certain, easy to prove and unchanging fact of place of marriage, there would be no migratory divorce, and the perplexing confusion and uncertainty which attend it would disappear. It probably is not likely that the Legislatures of all the States ever will adopt the policy of making marriage in the State the sole basis of jurisdiction of divorce; but it seems to me socially desirable to facilitate legislation toward that end by holding that it is valid, rather than to prevent such legislation by holding it invalid; and when judicial decision can promote a socially

desirable end without any sacrifice of legal principle, I think it is proper to mould decision so as to promote that end.

I conclude, therefore, that marriage within the State is a fact sufficient of itself to enable a State to confer upon its courts jurisdiction of an action to dissolve that marriage, that subdivision 2 of section 1147 of the Civil Practice Act is constitutional, and that the complaint herein states a cause of action of which the court has jurisdiction.

I now come, therefore, to the other question, whether the action is, not only one of which the court has jursidiction, but, also, one of such nature that process in it may be served by publication or outside the State.

A State constitutionally may provide for service by publication or outside the State in actions which involve or are designed to affect a *res* which is within the jurisdiction of the court (*Pennoyer* v. *Neff*, 95 U. S. 714, 734, 735; *Arndt* v. *Griggs*, 134 U. S. 316; *Huling* v. *Kaw Val. Ry.*, 130 U. S. 559; *American Land Co.* v. *Zeiss*, 219 U. S. 47; *Leigh* v. *Green*, 193 U. S. 79; *Geary* v. *Geary*, 272 N. Y. 390) and also where a nonresident consents to the exercise of jurisdiction over him or does an act which the State reasonably can and does treat as a consent to the exercise of jurisdiction over him (*Gilbert* v. *Burnstine*, 255 N. Y. 348; *Pohlers* v. *Exeter Mfg. Co.*, 293 N. Y. 274, 279; *Matter of Heyman* v. *Cole Co.*, 242 App. Div. 362; *Hess* v. *Pawloski*, 274 U. S. 352; *Old Wayne Life Assn.* v. *McDonough*, 204 U. S. 8; *Pennsylvania Fire Ins. Co.* v. *Gold Issue Min. Co.*, 243 U. S. 93; *Mitchell Furniture Co.* v. *Selden Breck Co.*, 257 U. S. 213).

New York provides for service by publication or outside the State in actions for divorce (Civ. Prac. Act, § 232) and has so provided during the more than ninety years it has also provided that marriage within the State is itself a fact which gives jurisdiction of an action for divorce (Code of Procedure, L. 1848, ch. 379, 380, as amd. by L. 1851, ch. 479, § 135; L. 1879, ch. 542; L. 1899, ch. 301; L. 1914, ch. 346; L. 1930, ch. 833; L. 1935, ch. 623; L. 1946, ch. 144); and it is established that marital status is so analogous to a *res* that it is to be treated as constituting a *res* within the meaning of the constitutional rule above stated if the suing spouse be domiciled in the State in which suit is brought, even though the other spouse be domiciled elsewhere (*Atherton* v. *Atherton*, 181 U. S. 155; *Williams* v. *North Carolina*, 317 U. S. 287; *Geary* v. *Geary*, 272 N. Y. 390, *supra*), but is not such a *res* if neither spouse be domiciled in the State in which the action is brought *and no ground of jurisdiction in*

*that State other than domicile is shown* (*Bell* v. *Bell*, 181 U. S. 175).*

* *Bell* v. *Bell* and *Atherton* v. *Atherton* are well known and frequently cited cases, but it nevertheless seems to me that lack of careful attention to their particular facts has resulted in their being a cause of much confusion rather than being the very clarifying cases they really are when their facts are carefully considered. It is because of that feeling that I here undertake to state the cases according to what I believe to be their clarifying simplicity.

Both cases were decided the same day, and both went to the United States Supreme Court from the Court of Appeals of New York. In one the decision of the Court of Appeals was affirmed, and in the other the decision of the Court of Appeals was reversed, although the cases had numerous similarities.

Both cases were actions in New York by a wife, for a divorce in one case and for a separation in the other. In both, the husband pleaded that he already had obtained a divorce from the wife in another State (Kentucky in the *Atherton* case and Pennsylvania in the *Bell* case), and in both, the wife had replied that the divorce previously granted to the husband in the other State was invalid because the court granting it did not have jurisdiction.

In *Atherton* v. *Atherton* the marriage had taken place in New York, but the parties afterwards had moved to and had lived together in Kentucky. Allegedly because of cruel treatment, the wife then returned to her mother in New York. The husband continued to reside in Kentucky and sued there for divorce. Process in his action was served upon the wife by publication. The New York courts held that the husband's Kentucky decree was inoperative and void as to the wife and not a bar to her action for separation, but the United States Supreme Court reversed on the ground that the New York courts had failed to give full faith and credit to the husband's Kentucky decree. The case is thus a square holding that the marital status of the husband was such a *res* as gave to Kentucky jurisdiction to grant him a divorce upon service of process upon the wife by publication.

In *Bell* v. *Bell* the marriage had taken place in Illinois, but the parties afterwards had moved to and lived together in New York. The wife then returned to her mother in Illinois, and the husband went to Pennsylvania and sued for divorce. The New York courts found that the husband was not a bona fide resident of Pennsylvania, that the Pennsylvania decree consequently was not binding upon her, and that she was entitled to a divorce (4 App. Div. 527, affd. 157 N. Y. 719, 181 U. S. 175).

In brief summary, therefore, the *Atherton* case holds that because the husband was domiciled in Kentucky, that State had jurisdiction to grant him a divorce even though the wife was domiciled in New York and process from the Kentucky court was served upon her by publication only; and the *Bell* case holds that because neither husband nor wife was domiciled in Pennsylvania, that State did not have jurisdiction of the husband's action for divorce. But the *Bell* case is not contrary to my holding because the Bell marriage had not taken place in Pennsylvania.

The opinion of the Supreme Court in the *Bell* case contains two statements which I believe are the source of the now frequently repeated statement that domicile is the foundation of jurisdiction of divorce, viz.: "No valid divorce from the bond of matrimony can be decreed on constructive service by the courts of a State in which neither party is domiciled." (181 U. S. 177) and

Whether or not marriage in the State makes the marital status of the parties to the marriage something so analogous to a *res* as to be treated as constituting a *res* within the meaning of the constitutional rule above stated even though neither spouse is domiciled in the State, is the precise question which is presented by this case and which is not covered by any reported case so far as I have discovered.

It seems to me that the answer clearly is *yes*.

In addition to what I already have said, I suggest: If A and B marry in New York and then move to France, their connection with New York, at least as respects their marital status, still is at least as close and intimate as the connection of either of them would be with Nevada if, instead of both going to France, one went to Nevada and the other either stayed in New York or moved to any other State or country; and New York's interest in their marital status still would be as legitimate and as great as Nevada's interest therein would be if one came to Nevada and the other stayed in New York or moved to any other State or country.

If one went to Nevada and the other stayed in New York or went to Florida or France or to any other State or country, the one who went to Nevada could sue there for divorce and serve process upon the other by publication or outside of Nevada (*Atherton* v. *Atherton, supra; Williams* v. *North Carolina, supra*), and I think it logically follows that, in a suit brought by one in New York for divorce, process can be served upon the other by publication or outside of New York.

A State constitutionally may say that if a nonresident drive an automobile along its highways, he thereby consents that process in a suit brought in that State to recover damages for an injury done by him in the course of such driving may be served upon a designated official of that State, provided the

"the court in Pennsylvania had no jurisdiction of the husband's suit for divorce, because neither party had a domicil in Pennsylvania". (181 U. S. 178.)

As the marriage of the parties in that case had not taken place in Pennsylvania and they never had lived together in Pennsylvania, there was no ground other than domicile upon which Pennsylvania could have jurisdiction of the husband's suit for divorce; and the statements quoted were correct as applied to that case. But I think it equally plain that neither the decision itself nor anything said in the opinion is in any way inconsistent with the idea that if the marriage had taken place in Pennsylvania, then Pennsylvania, upon that ground alone, would have had jurisdiction of the husband's suit and Pennsylvania's decree would have been valid and would have defeated the wife's subsequent suit in New York precisely as the husband's Kentucky decree in the *Atherton* case defeated the wife's subsequent suit in New York.

State also makes it the duty of that official to take such steps with respect to such process as make it reasonably certain that the nonresident will in fact receive notice of the suit (*Hess* v. *Pawloski,* 274 U. S. 352; *Wuchter* v. *Pizzutti,* 276 U. S. 13); and I think that marrying in a State is an act of such infinitely greater moment and significance in tying the parties to that State than the act of driving a motor car along the highways of a State, that it logically follows a fortiori that by marrying in a State a person makes his or her marital status a *res* of which that State has such jurisdiction as to enable it to authorize publication of process in an action by the other spouse to dissolve that marriage.

By agreeing to arbitrate a controversy in a State a nonresident or foreign corporation impliedly submits to an enforcement of the arbitration by process of the courts of that State served outside that State (*Gilbert* v. *Burnstine,* 255 N. Y. 348; *Matter of Heyman* v. *Cole Co.,* 242 App. Div. 362; *Prosperity Co.* v. *American Laundry Mach. Co.,* 271 App. Div. 622, affd. 297 N. Y. 486; *Republique Francaise* v. *Cellosilk Mfg. Co.,* 124 N. Y. S. 2d 93); and I think that marrying in a State is an act of infinitely greater moment and significance as an implied submission to a dissolution of that marriage by that State upon process served by publication or outside the State.

A man who goes into a State and there acquires property and then leaves the State is deemed to have consented that the State may subject the property to judicial process to answer demands made against him in his absence, according to any practicable method that reasonably may be adopted, and he cannot assert that subjecting his property to such demands by means of the process of foreign attachment is a denial of due process of law (*Ownbey* v. *Morgan,* 256 U. S. 94, 110, 111); and for much stronger reasons I think that by acquiring a marital status in a State a man must be deemed to have subjected that marital status to the right of that State to dissolve it for reasons which that State establishes and upon process served by publication or outside the State.

I conclude, therefore, that this action is, not only one of which the court has jurisdiction, but, also, one of such nature that process in it may be served by publication or outside the State.

That the sequestration of defendant's property is valid is too clear to merit discussion (Civ. Prac. Act, § 1171-a; *Matthews* v. *Matthews,* 240 N. Y. 28, 247 N. Y. 32; *Geary* v. *Geary,* 272 N. Y. 390, *supra*).

The motion is therefore in all respects denied.