320 P.2d 1020

Georgia M. WALLACE, Plaintiff-Appellee,

v.

John S. WALLACE, Jr., Defendant-
Appellant.

No. 6229.

Supreme Court of New Mexico.

Jan. 23, 1958.

McAtee, Toulouse & Marchiondo, Albuquerque, for appellant.

Irving E. Moore, Ramon Lopez, Albuquerque, for appellee.

LUJAN, Chief Justice.

Appellant John S. Wallace and appellee Georgia M. Wallace were married in Texas in 1951 while appellant was a serviceman. Three children were born of the marriage. In 1953 after appellant's term of enlistment had expired the couple lived in Arkansas for two months. Appellant then reenlisted in the Air Force. He was transferred to New Mexico in January of 1955, and both he and appellee arrived in this state on January 25, 1955. In September of 1955 the parties purchased a home in Albuquerque, New Mexico.

On February 28, 1956, appellant instituted a suit for divorce in Arkansas. On March 7, 1956, appellee instituted a suit for divorce in New Mexico. On March 16, 1956, the parties, through respective counsel effected a reconciliation and it was agreed that upon notice of dismissal of the Arkansas suit the New Mexico suit would be dismissed. By letter dated March 21, 1956, appellee and her attorney were advised by appellant's Arkansas attorney that the Arkansas suit had been dismissed. Nonetheless, the Arkansas decree of divorce was granted April 6, 1956.

Appellee thereupon amended her complaint asking that the Arkansas decree be set aside as having been obtained by fraud. On April 13, 1956, an order to show cause why the Arkansas decree should not be set aside and why appellant should not return two of the parties' minor children to appellee was filed. On April 20, 1956, a hearing was had on this order to show cause and appellant was present to testify. A final decree of divorce was granted by the district court on May 18, 1956. On October 8, 1956, the court entered a final decree of child custody and division of community property. The court refused to accord the Arkansas decree full faith and credit for the reason that it was obtained through fraud and deceit, and appellant does not question the action taken by the court.

We wish to emphasize at the outset that appellant appeared personally and testified at length in the hearing on the order to show cause. Throughout the entire proceedings appellant was represented by counsel and submitted both findings of fact and conclusions of law. His right to introduce evidence and otherwise conduct his defense was fully protected. He was afforded his day in court with respect to every issue involved in this litigation. There is no question but that the court had in personam jurisdiction over both parties.

Appellant relies on the following point for reversal:

"As the parties were not domiciled within the State of New Mexico the court was without jurisdiction over the subject matter and the decree issued was invalid."

Section 22–7–4, 1953 Compilation provides as follows:

"Residence requirement.—The plaintiff in action for the dissolution of the bonds of matrimony must have been an actual resident, in good faith, of the state for one (1) year next preceding the filing of his or her complaint; Provided, however, that in a suit for the dissolution of the bonds of matrimony wherein the wife is plaintiff, the residence of the husband in this state shall inure to her benefit and she may institute such action setting up any of the causes mentioned in section 2773(25–701) (22–7–1) immediately after the accrual thereof, providing her husband shall have been qualified as to residence to institute a similar action; *and Provided further, persons serving in any military branch of the United States government who have been continuously stationed in any military base or installation in the state of New Mexico for such period of one (1) year, shall for the purposes hereof, be deemed residents in good faith of the state and county where such military base or installation is located."* (Emphasis supplied.)

Since the appellant was in the military service of the United States at the time the action in the instant case was brought, and since both he and appellee had resided continuously in this state for more than one year, the trial court's jurisdiction was grounded on the italicized portion of the above quoted statute.

Assuming that appellant is correct in his contention that the parties were not domiciled in New Mexico at the time instant action was filed, does it follow that the court was without jurisdiction? We think not.

In the case of Crownover v. Crownover, 58 N.M. 597, 274 P.2d 127, we held that upon proof of continuous station pursuant to Section 22–7–4, 1953 Compilation, a conclusive presumption of domicile arises. We are fully cognizant of the fact that holding a domiciliary intent could be conclusively presumed from a period of residence was tantamount to a repudiation of the theory that domicile is the *only* jurisdictional basis for divorce. It is within the power of the legislature to establish reasonable bases of jurisdiction other than domicile.

The United States Supreme Court has never held that domicile of one of the

parties is the only jurisdictional basis for divorce. This court is convinced that the concept of domicile is not entitled to constitutional sanctity. See Alton v. Alton, 3 Cir., 207 F.2d 667, 681 (dissent). Abandonment of the subjective intent element inherent in the doctrine of domicile does not violate any fundamental right embodied in the due process clause. As Mr. Justice Rutledge said in Williams v. North Carolina, 325 U.S. 226, 255, 65 S.Ct. 1092, 1107, 89 L.Ed. 1577 (dissent):

> "The Constitution does not mention domicile. Nowhere does it posit the powers of the states or the nation upon that amorphous, highly variable common-law conception. * * *"

As a natural consequence of the rule that a judgment is not entitled to obligatory enforcement by any court unless the court rendering it had jurisdiction, plus the concept that a suit for divorce is a type of in rem proceeding, there have been innumerable statements to the effect that "a state lacks jurisdiction to dissolve a marriage where neither spouse is domiciled within the state". Restatement, Conflicts Section 111. Yet in practically every case where domicile has been said to be a jurisdictional necessity, it was required by the state of the forum. Most states, by statute, make domicile a prerequisite to any type of divorce action. 3 Nelson, (Divorce and Annulment) Appendix 2d Ed. Where domicile is a statutory jurisdictional prerequisite it is quite correct to say that jurisdiction for divorce is founded on this concept. It is quite another matter to flatly declare that there may be no other relation between a state and an individual which will create a sufficient interest in the state under the due process clause to give it power to decree divorces. David-Zieseniss v. Zieseniss, 205 Misc. 836, 125 N.Y.S.2d 649.

The traditionally domiciliary requirement is designed to prevent divorce-minded couples from shopping for favorable residence requirements. The concept of domicile has been notably unsuccessful in achieving this goal. The result is more nearly reached under a statute, such as the one in question, which in effect grounds jurisdiction on the strength of the facts connecting the parties to the state of the forum. See, Cook, Logical Bases of the Conflict of Laws 463.

Section 22–7–4, supra, is not an attempt to convert divorce into a transitory, in personam action. Nor is its objective the luring of divorce-shopping couples to this state. This statute is entirely unlike the one which was ruled unconstitutional by the Alabama court in Jennings v. Jennings, 251 Ala. 73, 36 So.2d 236, 3 A.L.R.2d 662. The statute there in question gave the Alabama courts jurisdiction to grant divorces if personal jurisdiction was obtained

over both parties. See, also Alton v. Alton, supra.

We have no quarrel with the view that more than mere physical presence of a divorcing couple within a state should underlie divorce jurisdiction. Certainly much more is required under the portion of our statute here in question. When service families have resided in this jurisdiction for one year, the state has a substantial interest in their domestic relations. Such is the situation in the instant case. The parties resided in New Mexico continuously for over a year. Their connection with this state was clear and definite.

We cannot close our eyes to reality. New Mexico has a much more intimate connection with service families who have resided here for one year than the "six-weeks divorce" states ever achieve with most of their alleged domiciliaries. The following statement pinpoints this particular weakness of the domicile requirement.

"In cases of migratory divorce it has been necessary for the plaintiff to swear that he is a resident of the forum state, i. e., a person who has established himself in the state with the intention to remain so established indefinitely. He, or more frequently she, who so swears with the return ticket to the home state in the wallet or handbag, commits perjury." Rhein-stein, The Constitutional Bases of Jurisdiction, 22 U. of Chi.L.Rev. 775, 776, (1955); See Granville-Smith v. Granville-Smith, 349 U.S. 1, 28, 75 S.Ct. 553, 99 L.Ed. 773 (dissent).

Precedent is not lacking for the conclusion that divorce jurisdiction can be founded on circumstances other than domicile. A servicemen's divorce statute almost identical with the one here in question has been consistently upheld by the Kansas court. Craig v. Craig, 143 Kan. 624, 56 P.2d 464; Schaeffer v. Schaeffer, 175 Kan. 629, 266 P.2d 282. That domicile is not the exclusive jurisdictional basis for divorce was recognized in the New York case of David-Zieseniss, supra. The court upheld a statute giving the courts of New York jurisdiction to dissolve marriages in cases where the parties had been married in that state.

Statutes setting up alternative bases of divorce jurisdiction are not unique. Alabama has a "servicemen's divorce statute" similar to the ones in Kansas and New Mexico. General Acts of Alabama, Act No. 576 (1955), Code 1940, Tit. 7, § 96(1).

It is provided by statute in Colorado that the courts of that state have jurisdiction to grant divorces without regard to domicile where the ground is adultery or extreme cruelty. Colorado Rev.Stats., Section 46–1–3 (1953). Minnesota law provides likewise where the ground for

divorce is adultery. Minnesota Statutes, Section 518.07 (1953).

 We feel that an extended discussion of full faith and credit is unwarranted. Our answer to appellant's contention that a divorce decree has no internal validity unless it is entitled to full faith and credit elsewhere is that the United States Supreme Court has never so held. It may well be that due process and full faith and credit are not coextensive. Crownover v. Crownover, supra (concurring opinion). Other than this suffice it to say that since the appellant submitted to the jurisdiction of the court he would not be allowed to attack the decree collaterally in another state. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429; Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451. Nor may this decree, wherein the defendant appeared and had an opportunity to question the jurisdiction of the court, be attacked by a third party in a sister state since it is not subject to collateral attack in this state. Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552.

 Appellant next contends that without domicile of at least one of the parties, judicial jurisdiction to decree child custody is lacking, especially where the children are out of the state at the time. The rules in regard to custody jurisdiction are not uniform in the various states. Such diversity may be attributed in part at least to the fact that in custody cases two distinct elements are always present: (1) the child-state relationship, sometimes referred to as status, and (2) the respective claims of the parents to the child's custody. Payton v. Payton, 29 N.M. 618, 225 P. 576. Some courts tend to emphasize one of these elements, some the other.

One view is that a court has jurisdiction in custody matters only if the child is a domiciliary of the state. Restatement, Conflicts Section 117. In cases where domicile and "Home in fact" are synonymous the significance of domicile in settling questions of custody may be conceded. But it frequently happens that the child's technical domicile has little or no practical concern with the child's fate. Stansbury, Custody and Maintenance Law Across State Lines, 10 Law & Cont.Probs., 819 (1944).

Recognizing that domicile is often inadequate as a basis of jurisdiction over custody, a number of courts have either adopted as a sole test or have added as an alternative basis of custody jurisdiction the physical presence of the child within the state. See, Stumberg, The Status of Children in the Conflict of Laws, 8 U. of Chi.Law Rev. 42, (1940).

A third basis for custody jurisdiction is in personam jurisdiction over both parents. Anderson v. Anderson, 74 W.Va. 124, 81 S.E. 706; Stephens v. Stephens, 53 Idaho 427, 24 P.2d 52; Burgo v. Burgo, D.C., 149 F.Supp. 932. See, also, Martz v. Martz, 15 Cal.App.2d 224, 59 P.2d 170. This theory is based on the premise that custody is primarily a question of parental rights and that the court is simply making a determination as to which parent, at the particular time, has the best claim to the child. Stumberg, The Status of Children in the Conflict of Laws, supra.

This court takes the position that a state which meets any of the above jurisdictional tests has a sufficient social interest in the welfare of the child to justify its courts in concerning themselves with his custody. Furthermore, not only may there be alternative bases of jurisdiction over custody in a single state, several states may have concurrent jurisdiction. Stafford v. Stafford, 287 Ky. 804, 155 S.W.2d 220; White v. Shalit, 136 Me. 65, 1 A.2d 765. As the court said in Sampsell v. Superior Court of Los Angeles, 32 Cal.2d 763, 197 P.2d 739, 749:

"The respective theories are based on the assumption that in order to achieve finality in this matter one court at one given time must have an exclusive right to determine the issue [of custody] * * * It is doubtful, however, whether the best interest of the child, the paramount consideration in custody proceedings, is served thereby."

Professor Stansbury in his excellent article, Custody and Maintenance Across State Lines, supra, states the following at page 830:

"Running through the custody cases, however, is a persistent assumption that some one state must have exclusive jurisdiction to determine the custody of a child at a given time. This is the Restatement view, and it is understandable if custody is 'status' and if status in turn is within the sole jurisdiction of the courts of domicil—a line of reasoning that has already been subjected to questioning."

■ We conclude that the district court in the instant case had in personam jurisdiction over both parents. It follows therefrom that the court had jurisdiction to determine custody and that the decree must be affirmed.

It is so ordered.

McGHEE and COMPTON, JJ., concur.

SADLER and KIKER, JJ., not participating.