**Harris Y. LAUTERBACH, Appellant,**

v.

**Edna Elizabeth Harris LAUTERBACH,
Appellee.**

**No. 425.**

Supreme Court of Alaska.

May 14, 1964.

G. F. Boney, Burr, Boney & Pease, Anchorage, for appellent.

Helen L. Simpson, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Appellant, an officer in the United States Air Force, has been stationed in Alaska under military orders since July 1960. He filed a complaint for a divorce from appellee in Pennsylvania, the state of their marriage, in October 1961. Approximately 9 months later, on July 31, 1962, he commenced this action for divorce in the superior court of this state. Appellant's complaint was dismissed by the court on two grounds: lack of jurisdiction over the subject matter of the action, and the pendency of the Pennsylvania divorce proceeding.[1] This appeal followed.

The superior court of Alaska has jurisdiction over a divorce action if the person who commences the action has been a resident of this state for at least one year before the action was commenced.[2] As to the one-year residence requirement, AS 09.-55.160 provides with respect to military personnel:

> "A person serving in a military branch of the United States government who has been continuously stationed in a military base or installation in the state for a period of one year shall be deemed a resident in good faith of the state for the purposes of §§ 70–230 of this chapter."

Applying Alaska divorce law to the facts in this case, it is clear that the court below did have jurisdiction over the subject matter of this action, since it is not disputed that appellant had met the statutory requirement of one year continuous military station in Alaska. Appellee argues, however, that the above statutes must be interpreted as requiring technical domicile of one year, rather than mere physical presence, as a prerequisite to divorce jurisdiction; that one of the requisites of technical domicile is the intent of one to make a certain place his home for an indefinite time[3]; and that appellant could not have had the intent necessary to make him an Alaska domiciliary for the requisite one year, because nine months before he filed for a divorce in Alaska he had filed for a divorce in Pennsylvania and in his pleadings asserted that he had been a Pennsylvania resident for one full year before filing.

■ Implicit in appellee's argument is the assertion that domicile within this state is a jurisdictional prerequisite to the maintenance of a divorce action. This is the rule of the American Law Institute's Restatement of the Law.[4] We are not in accord with that rule. Domicile is not the sole jurisdictional basis for divorce unless made so by statute. As stated by the Supreme Court of New Mexico:

> "Where domicile is a statutory jurisdictional prerequisite it is quite correct to say that jurisdiction for divorce is founded on this concept. It is quite another matter to flatly declare that there may be no other relation between a state and an individual which will create a sufficient interest in the state under the due process clause to give it power to decree divorces."[5]

Prior to the enactment of AS 09.55.160 it had been held by the District Court for the Territory of Alaska that jurisdiction to

1. Appellee did not appear in the Pennsylvania action and it was discontinued on appellant's ex parte motion. However, the discontinuance was vacated by the Pennsylvania court on motion by appellee's guardian. See Lauterbach v. Lauterbach, 202 Pa.Super. 260, 195 A.2d 159 (1963).

2. AS 09.55.140 provides: "No person may commence an action for divorce until he has been a resident of the state for at least one year before the commencement of the action."

3. Restatement, Conflict of Laws §§ 15, 18, 19, 20 (1934).

4. Restatement, Conflict of Laws § 111 (1934) provides: "A state cannot exercise through its courts jurisdiction to dissolve a marriage when neither spouse is domiciled within the state."

5. Wallace v. Wallace, 63 N.M. 414, 320 P. 2d 1020, 1022 (1958); see Wheat v. Wheat, 229 Ark. 842, 318 S.W.2d 793 (1958); Wood v. Wood, 159 Tex. 350, 320 S.W.2d 807 (1959).

grant a divorce was lacking in the case of a person in the military service, stationed in Alaska under orders and living on a military post or reservation. The reason given by the territorial court for this holding was that domicile was a jurisdictional prerequisite to obtaining a divorce, and that one in the military service and living on a military reservation could not acquire a domicile in Alaska because he was subject to obedience to military orders and could not freely choose Alaska as his home.[6] This state of the law worked an unwarranted hardship on military personnel, since regardless of the length of time they were in the state on military assignment they were deprived of a solution to their marital problems that the law afforded others. Undoubtedly, it was to alleviate this hardship and inequity that AS 09.55.160 was enacted by the first state legislature in 1959.[7]

While military personnel stationed in this state may not be citizens of the state in the sense of having a technical domicile here, they are an important segment of the residential population.[8] There are approximately 248,000 people in Alaska. Of this total population, about 31,000 are military personnel, 40,000 are dependents of military personnel, and 7,000 are civilian employees working for the military.[9] The great majority of the military personnel and their dependents reside on bases closely adjacent to the major population areas in Anchorage and Fairbanks. Many of them commonly take active parts in the social and community affairs of those cities. The children of the military personnel are educated in "on-base" schools operated by the state.[10]

The economic investment of the military in Alaska is considerable. Over two and one-half billion dollars are invested in capital assets in Alaska. Over one-third billion dollars are spent annually to operate the military forces in Alaska, and the greater portion of this amount is spent within the state.[11]

The civilian and military population work closely together in areas of mutual interest, and also in areas which are of primary interest to the civilian population. The Alaskan Command carries on an extensive fish and game conservation program in close cooperation with the state fish and game department. During natural disasters and other emergencies, the military in Alaska has been of great assistance to the civilian population. This was demonstrated quite recently when, following the major disaster resulting from earthquake and tidal waves on March 27, 1964, the Alaskan Command immediately utilized its forces in rendering invaluable aid to the stricken areas of this state. When villages along the Yukon and Kuskokwim Rivers have been inundated by flood waters, the military has evacuated entire villages, and then has returned the villagers to their homes after the floods have subsided. In search and rescue activities, the military has performed outstanding service. In the past year the Alaskan Command has provided some 2,000 aircraft flying hours in search and rescue missions involving persons lost or missing in the vast, uninhabited wilds of this state.[12]

These facts are pointed out to show that Alaska has a real and substantial basis for its interest in the domestic affairs of service families that reside here for one year. Certainly, that interest is as great, if not greater, than that of those states which feel free to assert jurisdiction over marital relations at the end of six weeks of residence.[13] The marital problems of

6. Wilson v. Wilson, 10 Alaska 616 (D. Alaska 1945).

7. SLA 1959, ch. 51.

8. Wood v. Wood, 159 Tex. 350, 320 S.W. 2d 807, 810 (1959).

9. Address to second session of Third Alaska Legislature, by Lt. General R. J. Reeves, Commander in Chief, Alaskan Command (February 10, 1964). 1964 Alaska House Journal, Supplement 9 at 5, 7.

10. Id. at 9.

11. Id. at 6.

12. Id. at 7-9.

13. Wallace v. Wallace, 63 N.M. 414, 320 P. 2d 1020, 1023 (1958).

service people in this state are as deserving of solution under our laws as are the marital problems of our civilian population.

We hold that AS 09.55.160 establishes a reasonable basis for the exercise of jurisdiction over divorce involving military personnel. Since appellant had met the statutory requirement as to continuous military station for one year, the court below had jurisdiction to act. Whether appellant's technical domicile is in Pennsylvania or Alaska is of no significance. It was error to dismiss appellant's complaint for lack of jurisdiction.

It was also error to dismiss the complaint on the ground that a divorce action between the parties was pending in Pennsylvania. We are aware of no authority to support such action. The general rule is that the pendency of divorce proceedings in one state is not a bar to subsequent proceedings in another state.[14]

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

14. Ross v. Ross, 79 F.Supp. 716, 718–719 (S.D.Cal.1948); Mulvey v. Mulvey, 123 Colo. 320, 228 P.2d 452, 455–456 (1951); Restatement, Conflict of Laws § 619 (1934).