[No. 43443.   En Banc.   July 31, 1975.]

*In the Matter of the Marriage of* RAYMOND A. WAYS, *Respondent,* and LYDIA S. WAYS, *Petitioner.*

*William R. Garland,* for petitioner.

*William H. Fraser,* for respondent.

HOROWITZ, J.—Respondent below, Lydia S. Ways, seeks review by writ of certiorari of an order of the Superior Court for Kitsap County, Washington, denying respondent's motion to dismiss a petition for dissolution of marriage on the ground the court lacked jurisdiction to entertain it.

Petitioner below, Raymond A. Ways, is a member of the United States Navy on active military duty. In October 1973, pursuant to orders, petitioner reported aboard the USS *Enterprise,* an aircraft carrier, then undergoing repairs at the Puget Sound Naval Shipyard, Bremerton, Washington. Petitioner remained aboard the USS *Enterprise* until its departure on February 2, 1974, for the Alameda, California, area.

On November 30, 1973, petitioner filed a petition for dissolution of marriage in the Kitsap County Superior Court. Neither he nor his wife were domiciled in this state. Petitioner, however, relied on RCW 26.09.030 which provides for jurisdiction to dissolve a marriage "when a party . . . is a member of the armed forces and is stationed in this state . . ." On February 5, 1974, petitioner's wife, Lydia S. Ways filed a motion to dismiss the dissolution petition for lack or jurisdiction. Before the motion was heard, petitioner ceased being stationed in Washington when, on February 2, 1974, the USS *Enterprise* departed for the Alameda, California, area. The record fails to show whether petitioner left with his ship. The court denied respondent's motion to dismiss on May 17, 1974.

On June 3, 1974, respondent wife petitioned for a writ of certiorari to review the order denying the motion to dismiss and for a writ of prohibition prohibiting further proceedings in the dissolution action. In the petition for the writ counsel for respondent Lydia S. Ways stated she, to-

gether with the couple's four children, resided in Virginia Beach, Virginia, which had been the family home for several years; that neither she nor her husband had any connection with the State of Washington prior to her husband's being stationed aboard the USS *Enterprise*; that because neither of the parties was domiciled in Washington, the Washington court was without jurisdiction to proceed with the dissolution of the marriage.

Respondent contends RCW 26.09.030, which permits a nondomiciliary member of the armed forces stationed in this state to obtain a dissolution of marriage on the conditions described in that statute, denies respondent (1) due process and equal protection; (2) violates Const. art. 2, § 24, providing "[t]he legislature shall never grant any divorce;" and (3) Const. art. 4, § 6, which provides "the superior court shall have original jurisdiction in all cases . . . of divorce." For reasons later stated, we reverse the trial court's order.

Const. art. 2, § 24 is inapplicable. The dissolution or divorce decree is not sought or expected from the legislature; it is sought from the superior court pursuant to the grant of the original jurisdiction provided for by Const. art. 4, § 6. The question remaining is whether the State through its superior court in Kitsap County has jurisdiction to decree a marriage dissolution or divorce, neither of the marriage partners being a domiciliary of this state. We uphold RCW 26.09.030 but reverse because of petitioner's failure to comply with its requirements.

The question of whether a state court empowered to grant divorces has jurisdiction so to do unless one or both parties are domiciliaries of the state has created much controversy. *See* A. Ehrenzweig, *Conflict of Laws* §§ 71-72 (1962); R. Leflar, *American Conflicts Law* §§ 223, 225 (1968); R. Weintraub, *Commentary on the Conflict of Laws* 174-75, 191-94 (1971); Leflar, *Conflict of Laws and Family Law*, 14 Ark. L. Rev. 47 (1960); Rieke, *The Dissolution Act of 1973: From Status to Contract?* 49 Wash. L. Rev. 375, 379-82 (1974); Restatement (Second) of Conflict

of Laws §§ 70-72 (1971); 24 Am. Jur. 2d *Divorce and Separation* §§ 246, 250, 264 (1966).

The United States Supreme Court has not yet expressly held that domicile is the sole jurisdictional basis for granting a divorce. However, in dicta the court has stated:

> Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil. *Bell* v. *Bell*, 181 U.S. 175; *Andrews* v. *Andrews*, 188 U.S. 14. . . . Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance. The domicil of one spouse within a State gives power to that State . . . to dissolve a marriage wheresoever contracted. . . . Divorce, like marriage, is of concern not merely to the immediate parties. It affects personal rights of the deepest significance. It also touches basic interests of society. Since divorce, like marriage, creates a new status, every consideration of policy makes it desirable that the effect should be the same wherever the question arises.

*Williams* v. *North Carolina*, 325 U.S. 226, 229-30, 89 L. Ed. 1577, 65 S. Ct. 1092, 157 A.L.R. 1366 (1945).

In *Sasse* v. *Sasse*, 41 Wn.2d 363, 249 P.2d 380 (1952), this court, in explaining why the divorce state must be "the domicile of the plaintiff," said at page 365:

> [M]arriage is a status that is of peculiar interest to the state which is the domicile of married persons, where, in most instances, family life is conducted permanently. Jurisdiction over this status should be lodged in that state, permitting it to determine, by its laws, the grounds upon which a divorce (termination of the marriage status) shall be granted.

(Citations omitted.) Nevertheless, Mr. Justice Rutledge's dissenting opinion in *Williams* v. *North Carolina, supra* at 255, points out:

> The Constitution does not mention domicil. Nowhere does it posit the powers of the states or the nation upon that amorphous, highly variable common-law conception. Judges have imported it. The importation, it should be clear by now, has failed in creating a workable constitutional criterion for this delicate region.

If domicile of at least one of the marriage partners is the only basis for divorce jurisdiction, any decree entered without compliance with domiciliary requirements by at least one of the partners may be void and not entitled to full faith and credit. *Alton v. Alton,* 207 F.2d 667 (3d Cir. 1953), *vacated as moot,* 347 U.S. 610, 98 L. Ed. 987, 74 S. Ct. 736 (1954). Accordingly, if a domiciliary relationship is essential to jurisdiction, members of the armed forces stationed in this state—a substantial class of persons—would be deprived of an opportunity without regard to the merits of their claims to obtain a marriage dissolution. *Sasse v. Sasse, supra* at 366 points out: "A person in military service generally cannot lose or gain a domicile because he is stationed at a particular place in the line of duty."

Recognizing the plight of armed forces personnel, a number of states have enacted statutes to confer jurisdiction upon the courts of the divorcing state to permit armed forces personnel—nondomiciliaries—to obtain decrees of divorce in the state in which they are stationed.[1] Such statutes have been upheld. *Lauterbach v. Lauterbach,* 392 P.2d 24 (Alas. 1964); *Craig v. Craig,* 143 Kan. 624, 56 P.2d 464 (1936); *Wallace v. Wallace,* 63 N.M. 414, 320 P.2d 1020 (1958); *Wood v. Wood,* 159 Tex. 350, 320 S.W.2d 807 (1959). As stated in *Wallace v. Wallace, supra* at 417:

> Where domicile is a statutory jurisdictional prerequisite it is quite correct to say that jurisdiction for divorce is founded on this concept. It is quite another matter to flatly declare that there may be no other relation between a state and an individual which will create a sufficient interest in the state under the due process clause to give it power to decree divorces.

---

[1]RCW 26.09.030 reads in part as follows:

When a party who is a resident of this state or who is a member of the armed forces and is stationed in this state, petitions for a dissolution of marriage, and alleges that the marriage is irretrievably broken and when ninety days have elapsed since the petition was filed and from the date when service of summons was made upon the respondent or the first publication of summons was made, the court shall proceed as follows . . .

The word "station" in the context here means "military post." *See United States v. Phisterer,* 94 U.S. 219, 222, 24 L. Ed. 116 (1877).

*Lauterbach v. Lauterbach, supra* at 25 points out: "Domicile is not the sole jurisdictional basis for divorce unless made so by statute." Restatement (Second) of Conflict of Laws § 72 (1971) states:

A state has power to exercise judicial jurisdiction to dissolve the marriage of spouses, neither of whom is domiciled in the state, if either spouse has such a relationship to the state as would make it reasonable for the state to dissolve the marriage.

Comment *b* to § 72 further provides:

If one or both of the spouses are domiciled in the state, the state has a sufficient interest in the marriage status to give it judicial jurisdiction to dissolve the marriage (see §§ 70-71). The domicil of one or of both of the spouses in the state is not, however, the only possible basis of jurisdiction. A state may have a sufficient interest in a spouse by reason of some relationship other than domicil, to give the state judicial jurisdiction to dissolve the marriage. In the present state of the authorities, few definite statements can be made as to what relationships with a state, other than domicil, will suffice. Residence, as distinguished from domicil, by one of the spouses in the state for a substantial period, such as a year, is an adequate jurisdictional basis for the rendition of a divorce. On the other hand, the fact that the spouses were married in the state should not of itself provide an adequate jurisdictional basis. A distinction may ultimately be drawn between situations where both spouses are subject to the personal jurisdiction of the divorce court and where there is jurisdiction over only one spouse. One or more jurisdictional bases may be found adequate for the granting of a divorce in the first situation and inadequate in the second.

■ Legal scholars in the field agree domicile is not the only basis for divorce jurisdiction. *See* R. Leflar, *American Conflicts Law* § 225, at 546 (1968); R. Weintraub, *Commentary on the Conflict of Laws* 191 (1971); Leflar, *Conflict of Laws and Family Law*, 14 Ark. L. Rev. 47 (1960); Rieke, *The Dissolution Act of 1973: From Status to Contract?*, 49 Wash. L. Rev. 375, 379-82 (1974). Hence, just as domicile is sufficient to create a nexus between the divorcing state and

the party or parties seeking the divorce decree, so there may be a sufficient nexus if "either spouse has such a relationship to the state as would make it reasonable for the state to dissolve the marriage." Restatement, *supra*. In *Lauterbach v. Lauterbach, supra, Craig v. Craig, supra, Wallace v. Wallace, supra*, and *Wood v. Wood, supra*, the necessary jurisdictional nexus was created in the case of armed forces personnel stationed in the state not only by the fact of their being so stationed but also by the fact of compliance with prefiling residence requirements of varying durations.

Such prefiling residence requirements are constitutionally valid. *Sosna v. Iowa*, 419 U.S. 393, 406-07, 42 L. Ed. 2d 532, 95 S. Ct. 553 (1975). Compliance therewith evidences at least a "modicum of attachment to the State." *Sosna v. Iowa, supra* at 407. The court explained why such attachment was necessary in the following language:

> Where a married couple has minor children, a decree of divorce would usually include provisions for their custody and support. With consequences of such moment riding on a divorce decree issued by its courts, Iowa may insist that one seeking to initiate such a proceeding have the modicum of attachment to the State required here.

The jurisdictional necessity of a sufficient nexus between one or more of the spouses and the forum state makes it clear that an action for marriage dissolution or divorce differs from a mere transitory action between spouses in which jurisdiction to entertain the action does not depend on nexus, *e.g.*, domicile of the spouses. *See Bourestom v. Bourestom*, 231 Wis. 666, 285 N.W. 426 (1939), *overruled on other grounds, Haumschild v. Continental Cas. Co.*, 7 Wis. 2d 130, 95 N.W.2d 814 (1959). *See* Rieke, *supra*.

A marriage dissolution proceeding enables the court to grant both interim and permanent relief. If at the commencement of the action, the court lacks jurisdiction to grant permanent relief because of the absence of a sufficient nexus, the court in the dissolution proceeding still has jurisdiction to grant temporary relief because the same

nexus is not necessary for that purpose. *See* Uniform Marriage and Divorce Act § 302(a)(1), Commissioners' Note. *Cf. In re Marriage of Saucido*, 85 Wn.2d 653, 538 P.2d 1219 (1975).

In *Tupper v. Tupper*, 63 Wn.2d 585, 589-90, 388 P.2d 225 (1964), the court explained:

> [T]he legislature recognized that, within the framework of a single action, questions relating to residence, divorce, separate maintenance, annulment, support and suit money could and would arise, and undertook to make jurisdictional provision therefor. Only the in rem aspect of the action, *e.g.*, the power to grant divorce, is limited by the one year residence requirement. Jurisdiction of the court to afford in personam relief, *e.g.*, separate maintenance, suit money, etc., is not. Thus, jurisdiction over the parties before the court is not exhausted by a finding of lack of the one year residence qualification; it is merely diminished to the extent that the court lacks the power to dissolve the marriage. . . . The court retains its jurisdiction to decree such further relief as is contemplated by the statute, prayed for by the parties, and warranted by the evidence.

■ Accordingly, under RCW 26.09.030 as far as concerns the granting of the ultimate relief of marriage dissolution, jurisdiction so to do may be acquired after the action is commenced and need only exist by the time the decree is entered. RCW 26.09.030 contains no prefiling residence requirements either for domiciliaries or nondomiciliaries. No nexus problem arises as to the domiciliary because domicile is enough to create the necessary nexus. The problem arises as to the nondomiciliary member of the armed forces stationed in this state. However, prefiling residence requirements are not the only way of creating the required nexus. Such a nexus, in the case of armed forces personnel, can be created by providing a sufficient durational stationing period between the time the action is commenced and the time of the entry of the dissolution decree. Compliance with the requirements of such a durational period, to use the Restatement language, could make it "reasonable for the state to dissolve the marriage."

The necessary durational stationing requirements to create nexus with respect to members of the armed forces in Washington may be found in RCW 26.09.030. That statute appears to be an adaptation of section 302(a)(1) of the Uniform Marriage and Divorce Act. That section permits a member of the armed forces in the forum state to obtain from that state a decree of marriage dissolution, if, *inter alia*, one of the marriage partners "was stationed in this State while a member of the armed services, and . . . the . . . military presence has been maintained for 90 days next preceding the making of the findings . . ."

The Commissioners' Note to section 302(a)(1) makes clear that "[t]he 90 day period of subsection (a)(1) is intended to be continuous and to apply both to residents and to members of the armed services." The note also points out that a member of the armed forces who has just entered the forum state may commence the dissolution proceeding immediately so as to enable the court to enter such temporary orders as are necessary to protect the rights of the parties.

■ RCW 26.09.030 is somewhat ambiguous. It is not clear whether in the case of a member of the armed forces, the 90-day period that must elapse after the filing of the petition means a mere lapse of time even if the station is terminated during that period or implicitly means the station must continue during that 90-day period.[2] In light of the jurisdictional requirement of nexus it is more likely than not the legislature intended to make the 90-day period a continuous period not only to provide a suitable cooling-off period but also to create the otherwise nonexisting

[2]RCW 26.09.030 although containing a stationing requirement does not purport to contain an alternative 90-day continuous physical presence requirement usable as a basis for nexus. Assuming such an alternate requirement is implicitly contained in the statute, the result we reach would be the same. The appeal record does not show plaintiff remained physically present in the state after his station was changed February 2, 1974. The Commissioners' Note to section 302(a)(1) of Uniform Marriage and Divorce Act treats the duration of the station rather than the duration of physical presence as the key requirement.

nexus necessary to enable the court to enter a valid decree of dissolution at the end of that period. If RCW 26.09.030 were construed to permit a member of the armed forces upon becoming stationed in this state to promptly file a petition for dissolution of marriage and then because of change of station, leave the state the next day—the limited duration of the station would scarcely suffice to create the jurisdictional nexus necessary to permit the entry of the decree.

Obviously the necessity for complying with postfiling stationing requirements would make it impossible for members of the armed forces to benefit from RCW 26.09.030 if the government changed the member's station before he met the stationing requirements. The same would be true of prefiling residence requirements if any there were. Yet, it is the fact of failure not the reason therefor that is controlling. Compliance with imposed nexus requirements is essential if the court is to have jurisdiction to terminate a marriage.

██ It has been suggested that it is possible for a state to grant a divorce or marriage dissolution valid only in the state that grants it, regardless of nexus, notwithstanding the Fourteenth Amendment as construed in *Alton v. Alton*, 207 F.2d 667 (3d Cir. 1953), *vacated as moot*, 347 U.S. 610, 98 L. Ed. 987, 74 S. Ct. 736 (1954), is to the contrary and notwithstanding the risk of nonrecognition by other states. Such a decree, however, would be alarmingly unreliable and misleading. Persons divorced in one state under a decree treated as valid there, might be considered married in another state to which the parties might travel on a visit or move temporarily or permanently. A construction of RCW 26.09.030 that could bring about so alarming a result would render the validity of subsequent marriages uncertain, create serious domestic problems in connection with children, particularly children of subsequent marriages entered into on the faith of the validity of the divorce, and would prejudicially affect property rights and their distribution insofar as they were dependent upon the validity or the invalidity

of the marriage dissolution or its interstate recognition. It is unreasonable to believe that in enacting RCW 26.09.030 the state intended any such adverse consequences—consequences that would largely nullify the purposes of the statute so far as concerns members of the armed forces. Moreover, it is our duty to avoid rendering a statute unconstitutional by interpretation if by an alternative interpretation we may render it constitutional. *Swanson v. White*, 83 Wn.2d 175, 183, 517 P.2d 959 (1973); *Spokane v. Vaux*, 83 Wn.2d 126, 129-30, 516 P.2d 209 (1973).

To carry out the legislative intent in light of what has been stated, we hold the statute means the member of the armed forces must be stationed in this state continuously throughout the 90-day period described in the statute in order to confer jurisdiction upon the appropriate state court to enter a decree of dissolution. Here, petitioner's station was terminated February 2, 1974, 64 days—not the required 90 days—after the 90-day period commenced to run. The Kitsap County Superior Court never acquired jurisdiction to enter the decree.

Reversed.

STAFFORD, C.J., and HAMILTON, WRIGHT, and UTTER, JJ., concur.

BRACHTENBACH, J. (dissenting)—The majority opinion, as well written as it is, demonstrates the ability of the law to use logic and traditional legal principles to reach an illogical result.

The essence of the majority opinion is that if the petitioner had physically remained in this state an additional 26 days, some jurisdictional alchemy would have occurred causing this action to be properly within the jurisdiction of the courts.

To me the resolution of this case is very simple. The legislature has declared that our courts have authority to dissolve a marriage for "a party . . . who is a member

of the armed forces and [who] is stationed in this state
. . ." RCW 26.09.030.

Underlying this statute is a legislative determination that members of the armed services are entitled to access to and jurisdiction of our courts to enter a decree of dissolution. Contrary to the majority's view, I find nothing ambiguous in the statute. Rather it is clear on its face that a petition may be filed by a member of the armed forces who is stationed in this state. The petitioner met these qualifications and should be entitled to a decree.

It seems to me to be absurd to hold that some vague constitutional purpose or need is met by requiring an additional 26 days of physical presence within the state. Once the legislature reached a policy conclusion that a member of the armed forces stationed here could invoke jurisdiction, that policy should be implemented by the courts.

I would affirm the trial court.

FINLEY, ROSELLINI, and HUNTER, JJ., concur with BRACHTENBACH, J.

Petition for rehearing denied October 10, 1975.